SILSBURY and CALKINS *vs.* McCOON and SHERMAN.

The rule that property wrongfully taken and changed by a process of manufacture into a different species of property so as to lose its identity, cannot be re-taken by the former proprietor, does not depend upon the motives of the wrongdoer, but applies as well to the case of a wilful trespass, as to a taking by mistake.

TROVER for a quantity of whiskey, tried at the Montgomery circuit, in November, 1844, before WILLARD, C. Judge. A former trial of the cause had resulted in a nonsuit, which was set aside by the court. For a report of the case on the motion to set aside the nonsuit, see 6 *Hill*, 425.

On the second trial it was proved that one Hackney, a deputy of the sheriff of Montgomery county, on the 22d day of March, 1842, by virtue of a *fi. fa.* on a judgment in this court in favor of the defendants, against one Uriah Wood, sold the whiskey in question, being about twelve hundred gallons, and worth $277,68, he having previously levied upon it; and that upon the sale the defendants became the purchasers, and afterwards converted it to their own use. The whiskey was levied on and sold at the plaintiffs' distillery, and they forbade the sale. The plaintiffs having rested, the defendants offered to prove in their defence that the whiskey was manufactured from corn belonging to Wood, the defendant in the execution; that the plaintiffs had taken the corn and manufactured it into whiskey, without any authority from Wood; and that they knew at the time they took it, that it belonged to him. The plaintiffs

counsel objected to this evidence, insisting that Wood's title to the corn was extinguished by the conversion of it into whiskey. The judge sustained the objection and rejected the evidence, and the defendants' counsel excepted. Verdict for the plaintiffs. A motion is now made for a new trial, on a bill of exceptions.

*N. Hill, Jr.* for the defendants, insisted that in all cases of this description, whether relating to conversion of goods, or to title by accession, the law distinguishes between a *wilful* wrong-doer, and an involuntary one; and that the distinction is founded in the policy of discouraging trespasses and frauds. He cited *Silsbury* · v. *McCoon,* (6 *Hill,* 425;) 2 *Kent's Com.* 364; *Story on Bail. p.* 43, § 40; 2 *Black. Com.* 404; *Betts* v *Lee,* (5 *John.* 348;) *Curtis* v. *Groat,* (6 *id.* 168;) *Baker* v *Wheeler,* (8 *Wend.* · 505;) *Dig. lib.* 10, *tit.* 4, *leg.* 12, § 3; *Puff. book* 4, *ch.* 7, § 10; *Wood's Inst. C. L. p.* 92; 1 *Bell' Com.* 277, *note* 2.

*D. Cady,* for the plaintiffs, argued that the indentity of the grain was entirely destroyed when it was changed into whiskey, and that from thenceforth it belonged to the manufacturer, as was held when this cause came before the court on the former occasion; and that the additional circumstance offered to be proved on the second trial, made no difference in the principle upon which the defence rested. But if this were not so, still Wood, the owner of the grain, had an election to resort to his action of trespass or trover for the taking of the corn, or to take the product specifically from the wrongdoer. Having failed to make the election himself, the defendants could not do it for him.

Bronson, Ch. J. It is undoubtedly a general rule in every civilized state, that a man can only lose his title to property by the operation of law, or his own voluntary act. But this, like most other general rules, has its exceptions. If one wrongfully take the chattel of another, and merely change

its form and value by bestowing his labor and skill upon it, without destroying its identity, the property still remains in the original owner, and he may either retake it, or recover the value in its state of improvement. Thus, where leather is made into boots and shoes, cloth into a garment, trees into square timber, iron into bars, or timber into boards, shingles, or coal, the title remains in the owner of the original materials, and he may either retake the chattel in its improved state, or recover its enhanced value. But if the thing be changed into a different species, so that it cannot be reduced to its former rude materials, it then belongs to the new operator ; and he is only to make satisfaction to the former owner for the materials converted. Examples of this kind are, where grapes are made into wine, olives into oil, wheat into bread, milk into cheese, grain into malt, or corn into whiskey. In such cases the property is changed, and the original proprietor only has an action to recover his damages. Thus far our lawyers have followed the rule of the civil law. It will be sufficient to refer to the report of this case when it was before us on a former occasion, and the learned note of the reporter, for the authorities on this subject. (*Silsbury* v. *McCoon*, 6 *Hill*, 425.) We there held, that when corn is wrongfully taken, and manufactured into whiskey, by which the nature and species of the commodity is entirely changed, and its identity destroyed, the property is also changed, and the new product belongs to the manufacturer. The case has come back again upon an offer to show, that the corn was taken with the knowledge that it belonged to another ; and we are referred to the further teaching of the civilians, who hold that where the property was taken by a wilful trespass, the title is not changed, however great may be the change which has been wrought in the original materials.· But I do not find that this doctrine has ever been adopted into our law by any adjudication either here or in England. It was mentioned in *Betts* v. *Lee*, (5 *John.* 348,) and again in *Curtis* v. *Groat*, (6 *id.* 168 :) but although the judge who wrote the " per curiam" opinions in those cases, evidently had a strong leaning to the doctrine of the civilians, the decisions turned upon other

grounds. The changes had been from timber into shingles and coal: but the property had never been out of the possession of the original owner; and it was held in both cases that the identity of the original materials was sufficiently established. And where the change was from timber to coal, the only point necessarily decided was the one on which the case was put at the outset, that the matter in litigation was *res adjudicata.* The reasons for those judgments were, I presume, assigned by the learned commentator upon American law, who in his treatise still retained his former opinion. (2 *Kent*, 363.) But Blackstone, (2 *Com.* 404, 5,) lays down the rule, without any qualification, that when the thing is changed into a different species, as by making wine, oil, or bread, out of another's grapes, olives or wheat, it belongs to the new operator; who is only to make satisfaction to the former proprietor for the materials converted. The decisions on the general subject commenced as early as the Year book, 5 H. 7, fo. 15; (*a*) and if the distinction of the civilians between a wilful and an innocent trespass had ever been adopted into our law, we should be able to find the evidence of it in some reported adjudication. But none seems to have been known to Blackstone; none is

---

(*a*) This ancient case seems to place the right of the former owner, to take the thing in its altered condition, upon the question whether its identity could be made out by the senses. The following is a translation of the case: "A writ of trespass was brought for the taking of certain *slippers and boots.* And the defendant says that he was possessed of certain *dickers* of leather, and bailed them to one J. S., which said J. S. gave them to the plaintiff, and then the plaintiff made from them the slippers and boots, and the defendant came and took them, as he lawfully might do: and prayed judgment, *si actio.* Then the plaintiff moved the court that this plea was not good; and that the defendant could not take them again, because by the making of the boots and shoes, the property was so changed as to be of another nature: as if one took barley or grain and made malt of it, he from whom the grain was taken could not take the malt, because the thing taken is changed into one of another nature. And so, if trees are taken and a house built from them, he from whom the trees are taken cannot teardown the house to take them again, because other things are joined with them. But if a thing is taken wrongfully, and nothing is joined or mingled with it, nor is it altered to a thing of another nature, the party may take it again. Thus, if one take a tree and square it with an axe, there the party may take it again, because it is not changed to another article, nor is any thing mingled or

cited by Chancellor Kent in his commentaries; nor was any
such decision produced by the counsel who argued this case.

The question is not, as it has been sometimes artfully put,
whether the common law will allow the owner to be unjustly
deprived of his property, or will give encouragement to a wilful
trespasser. It will do neither. But in protecting the owner,
and punishing the wrongdoer, our law gives such rules as are
capable of practical application, and are best calculated to ren-
der exact justice to both parties. The proper inquiry is, in
what manner, and to what extent should the trespasser be
punished; and what should be the kind and measure of re-
dress to the injured party. A trespasser who takes iron ore and
converts it into watch springs, by which its value is increased
a thousand fold, should not be hanged; nor should he lose the
whole of the new product. Either punishment would be too
great. Nor should the owner of the ore have the watch springs;
for it would be more than a just measure of redress. Our law
has therefore wisely provided other remedies and punishments.
The owner may retake his ore, either with or without process,
so long as its identity remains; and may also recover dam-

---

joined with it. But if a man take silver and make of it a piece of money, or take a
piece of silver and gild it with gold—in either case the party cannot retake it. So
in this case the leather is mixed with thread: and therefore the party cannot retake
it. Wherefore it seems that the plea is not good.

But the court hold the contrary clearly. And as to the case of grain taken and
malt made of it, the party cannot retake it, because the grain cannot be known.
And so of pennies or groats, when another piece is made of them, this cannot be
taken—because one penny cannot be distinguished from another. So also is it if
one take a piece and from it make pennies at the mint, the party cannot take the
pennies, because they cannot be known one from the other. And so of all similar
cases. The same is the case in building a house. There the timber is changed,
becoming part of the freehold: and for this cause it cannot be taken. But in every
case where the thing itself may be known, there the party may take it, notwith-
standing that some other thing be joined or mingled with it. So if one take a piece
of cloth and make himself a coat, the owner may rightfully retake it, for the reason
that it is the same thing, and not different. So also in the case put, if one take a
tree and square it with an axe, the party may lawfully retake it, because the tree
may be known notwithstanding. The same of iron of which the smith makes a
tool. And so it was held by the whole court    (Year book, 5 H. 7, fo. 15, pl. 6.)

Silsbury *v.* McCoon.

ages for the tortious taking. Or without re-possessing himself of the property, he may have an action of trespass, in which the jury will not fail to give the proper damages. But the law will not allow the owner to wait until the ore has been converted into a different species of property, and then to seize the new product, either with or without process. Nor is the value of the new product the proper measure of damages, if he bring an action of trespass or trover.

Although there will not be many cases where the difference between the value of the rude material and the new product will be so striking as in the case which has been mentioned; yet in almost every instance where the chattel taken has been converted into a different species of property, the value of the new product will be more than the trespasser ought to pay, or the owner of the chattel ought to receive.

The common law not only has regard to the proper measure of redress and punishment, but its rules are such as can be successfully applied and administered. Before the thing has been transformed into a different species, its identity can be easily established; the owner can know what to retake, and his title can be proved in a court of justice. But after iron ore has been changed into watch springs or needles, grapes into wine, or corn into whiskey, it is nearly or quite impossible to trace the connection between the new products and the original rude materials.

In conceding for all the purposes of this case, that the owner may follow the property until it is changed into a different species, I must not be understood as expressing the opinion that such is the proper rule. As an original question, I think the owner should either reclaim the property before the new possessor has greatly increased its value, either by bestowing his labor and skill upon it, or by joining it to other materials of his own; or else that he should be restricted to a remedy by action for the damages which he has sustained. But the question may not be open to consideration upon principle; and for the present, I only mean to say, that we have followed the civil law far enough, without taking another step, and holding that

in the case of a wilful trespass the owner can never lose his title to the property. And it comes to that; for if he may trace his title from corn to whiskey, he may follow it so long as matter endures.

BEARDSLEY, J. concurred.

JEWETT, J. dissenting. It is a well settled principle, that where one wrongfully takes another's property, and by artificia means, changes it into a different species—as by making wine, oil, bread or whiskey, out of another's grapes, olives, wheat or corn; it belongs to the new operator or manufacturer—who is only to make a satisfaction to the former owner for the materials which he had so converted. (Silsbury v. McCoon, 6 Hill, 425; Brown v. Sax, 7 Cowen, 95; Baker v. Wheeler, 8 Wend. 505.)

In this case, the defendants offered evidence to show that the taking of Wood's corn by the plaintiffs, from which the whiskey was manufactured by them, was not only wrongful, but wilful. This evidence was rejected on the ground that the corn, having been converted into a new thing, whiskey, Wood's title thereto became extinct. It is quite obvious, that unless the law in relation to a title acquired by accession, distinguishes between a wilful wrongdoer and an involuntary one, the evidence was properly rejected. According to the Roman law, where the party who made the accession, did so with knowledge that he was violating another's rights, he acquired no title, however great the change wrought in the original materials or matter. (Dig. lib. 10, tit. 4, leg. 12, § 3.) In Puffendorf's Law of Nature and of Nations, (book 4, ch. 7, § 10,) it is laid down that "in all cases it is to be inquired whether the person who bestows a shape on another's matter, doth it with an honest, or with a dishonest, design. For he who acts thus out of a knavish principle, can by no means pretend that the thing belongs to him, rather than to the owner of the matter—though all the former reasons should concur—that is, though the figure should be the most valuable, though the matter should, as it were, be lost and swallowed up in the work, and though he should be in very great want of what he had

thus compacted. For the greater part of the two doth not draw to itself the less, barely by its own virtue, or on its own account; but there is required farther, some probable ground and plea in the owner of that part which exceeds, on which he may build his claim. Hence, if a man out of wilful and designed fraud, puts a new shape on my matter, that he may by this means rob me of it, he neither gains any right over the matter by this act, nor can demand of me a reward for his labor, any more than a thief, who digs through my walls, can claim to be paid for his great trouble in making a new door into my house ; or, than one that breaks an imposthume, otherwise incurable, with a blow that he designed for my death ; or than Autolycus could have asked a price for painting the horses which he first stole. And all this doth not proceed from any positive constitutions, but from the very dictate and appointment of natural reason, though nature doth not determine any particular penalty in the case. For to have exercised such a villany gratis, is not properly a punishment : and on the other hand, 'tis most just and reasonable, that I should not be obliged to pay a man wages for endeavoring to do me a mischief." In Wood's Institutes of the Civil Law, (p. 92,) the doctrine on this subject is stated thus : "He that made the new species shall be master of the whole, if it cannot be reduced to its first state and condition ; as when one shall press wine from your grapes, or build a ship from your timber, you cannot claim the wine or the ship." "But this determination only takes place in favor of the workman, *where the work was designed for his own use, and where he erroneously and by mistake thought the matter was his own.* For if it was intended for the use of any other, it is his upon the same terms for whose use it was making : and *if it is known that the grapes and timber are another's, and yet thereof he proceeds to make his wine or ship, he shall lose his labor and workmanship : the whole shall accrue to the owner, and an action may be maintained against him."

Chancellor Kent says : " The English law will not allow one man to gain title to the property of another upon the principle

of accession, if he took the other's property, *wilfully as a tres-passer.*" "So, (he continues,) the civil law, in order to avoid giving encouragement to trespassers, would not allow a party to acquire a title by accession, founded on his own act, unless he had taken the materials in ignorance of the true owner, and the materials were incapable of being restored to their original form. (2 *Kent's Com.* 363.)

In *Betts* v. *Lee,* (5 *John. Rep.* 348,) the action was trespass in taking and carrying away a quantity of shingles and stuff for making shingles. It appeared in evidence that the timber of which the shingles were made was cut by Lee on land belonging to one Bowne, for the cutting of which Bowne had sued Lee, that the suit had been discontinued on Lee's paying $30. Bowne then conveyed the land on which the timber was cut down, together with the shingles, to the plaintiffs, who converted them to their own use. Lee claimed the shingles upon the principle of accession. This court said that the civil law required the thing to be changed into a different species, and to be incapable of being restored to its ancient form, as grapes made into wine, before the original proprietor could lose his title; nor even then, did the other party acquire any title by the accession, unless the materials had been taken away, in ignorance of their being the property of another. In *Curtis* v. *Groat,* (6 *John. Rep.* 168,) the action was trover for 600 bushels of coals. The defendant pleaded that the coals were made on his land, out of his wood, and still remained there ; and this court said that the plaintiff had no right to the coals. The defendant's timber, by being cut and converted into coals, had indeed, they said, lost its primitive form, but the identity of the original material was here ascertained and admitted. "This case, the court added, comes within the decision of *Betts* v. *Lee ;* and the principle mentioned in that case, that a wilful trespasser cannot acquire a title to property merely by changing it from one species into another, applies to this case."

From the best consideration that I have been able to bestow upon this question, I have been led to the conclusion that the common law, equally with the civil law, distinguishes between

a wilful wrongdoer and an involuntary one, in relation to acquiring a title to property by accession—and that in the former case the wrongdoer cannot acquire title however great the change wrought in the original matter—but must lose his labor and workmanship. The whole, in its new form or shape, accrues to the owner of the original matter. If I am correct in this, it follows that the evidence offered was material and proper, and should have been received. The title of the property not being changed by the wilful acts of the plaintiffs, Wood had an election of remedies for his injury—either to take the whiskey, or bring an action of trover for the conversion of the corn or whiskey. In the latter case, the measure of damages would be the value of the whiskey. (*Brown* v. *Sax, supra.*) Although Wood had his election at the time the *fi. fa.* was delivered to the sheriff, yet a levy and sale of the whiskey on the *fi. fa.* determined his right to it.

Whether the fact that the whiskey had been so levied on and sold would or would not be received in evidence in mitigation of Wood's damages, in an action of trover by him against the plaintiffs, is not a question in this case, and is not therefore discussed. I am therefore of opinion that a new trial should be ordered.

New trial denied.