### THE PEOPLE *vs.* SAFFORD.

It is no answer to a charge of selling liquor by retail without licence that it was sold to the purchaser *under the direction and prescription of a licenced physician ·* it must also appear that it was prescribed for *medical purposes.*

An indictment was sustainable under the act of 1845, concerning excise, (*Stat. p.* 322,) for selling by retail any intoxicating or spirituous liquors or wines, while that act remained in force.

An indictment was also, at the same time, sustainable for the same offence under the revised statutes, except as to certain liquors excepted from their operation.

It is not competent for a party to discredit a witness called and examined by him, by asking him whether he had not made statements upon another occasion contradictory to the testimony which he had given.

Accordingly, where the prosecution, on the trial of an indictment for selling liquor without licence, called and examined a witness to prove a sale of liquor by the defendant to him, but which witness failed to prove an act of selling, and the counsel for the prosecution then asked him what he had sworn on the subject before the grand jury; *held* that the question was incompetent and inadmissible.

CERTIORARI to the general sessions of Washington county. The defendant was indicted in the sessions in October, 1846, for the offence of selling strong and spirituous liquor by retail, without licence, and for selling such liquor to be drank in his shop, &c. contrary to the provisions of the revised statutes. (1 *R. S.* 680, §§ 15, 16, 25.) The indictment did not contain any allusion to the excise law of 1845. The defendant having pleaded not guilty, the trial took place in March, 1847.

A witness for the prosecution (Bailey) testified that he had repeatedly bought wine of the defendant, by small measure, and drank it in his house. The defendant offered to prove that " all the wine drank by this witness was delivered to him

The People *v.* Safford.

by the defendant under the direction and prescription of a licenced physician." The counsel for the people objected to this testimony, and the court sustained the objection and excluded the evidence.

R. Baker, a witness for the prosecution, testified that the defendant had given him liquor and he presumed he had purchased some of him, but was not certain, and could not recollect purchasing any; though he had certainly drank liquor in the defendant's store. He said he was sworn and gave evidence before the grand jury, upon the finding of this indictment. The district attorney then asked him this question : " What did you testify before the grand jury?" The defendant's counsel objected, but the court overruled the objection and the defendant's counsel excepted. The witness then related the evidence which he had given before the grand jury, which went to show that he had purchased liquor of the defendant and paid him for it.

All the sales of liquor proved by the prosecution took place after the 19th May, 1846, on which day, as it was shown, the town of Salem, where the alleged offences were committed, voted " no licence," pursuant to the act of 1845. (*Stat. p.* 322.)

The court charged the jury that the act of 1845 had not altered the offence as created by the revised statutes of selling by retail without licence, but had regulated the manner of granting or withholding licences, and the mode of recovering penalties; that the statute referred to had not made any thing lawful which was criminal under the revised statutes. The defendant's counsel excepted to the charge, and requested the court to instruct the jury that it was not an indictable offence to sell liquor by retail since the vote of no licence. The court declined so to charge, and the defendant again excepted. The jury found the defendant guilty, whereupon he brought a *certiorari* to this court.

*S. Stevens*, for the defendant.

*J. Van Buren*, (attorney general,) for the people.

*By the Court,* BEARDSLEY, Ch. J. It appeared, on the trial, that the defendant had repeatedly sold wine by retail, to one Bailey, which he drank at the same time in the defendant's house. The defendant then offered to show that this wine had all been delivered by him to Bailey " under the direction and prescription of a licenced physician." The evidence was rejected and the defendant's counsel excepted.

I am not disposed to deny that the prescription of a licenced physician might justify such a sale ; but the liquor or wine sold must have been prescribed " for medical purposes." Such are the words of the statute. (*Laws of* 1845, *p.* 323, § 5.) The sale, so far as respects the vendor, must be made in good faith, to enable the patient to follow the advice of his physician. A mere sham prescription could be of no possible avail but to aggravate the offence. Here the offer was to show that wine had been prescribed, but not that it had been prescribed " for medical purposes." This falls short of what the statute requires, and the evidence was properly excluded by the court.

All the counts in this indictment are founded on the revised statutes, so that strictly speaking, it is unnecessary to pass upon the question whether an indictment could have been sustained on the act of 1845, while it remained in force. I entertain no doubt, however, that it could. That act may have made it illegal to sell certain liquors, the sale of which was not prohibited by the revised statutes, but it made no sale legal which those statutes branded as a crime. The act of 1845 declares that " whenever, by the provisions of this act, the electors of any town or city shall have determined that no licence shall be granted in such town or city, whoever shall sell by retail, any intoxicating or spirituous liquors or wines, or in any manner or by any device, shall sell by retail within such town or city, shall be liable to all the penalties imposed by title nine, of part first, chapter twenty, of the revised statutes for selling of strong or spirituous liquors or wines without licence." (§ 5.) Here is no exception as to the sale of " intoxicating or spirituous liquors or wines" of any description whatever, the sale of all being prohibited : but the revised statutes do contain an exception,

The People *v.* Safford.

making the sale of "metheglin, currant wine, cherry wine or cider," entirely legal. (1 *R. S.* 682, § 26 ) The act of 1845, therefore, so far as respects these liquors, enlarged the class of illegal sales.

It is made an offence by the revised statutes to "sell any strong or spirituous liquors or wines to be drank in" the house or shop of the seller, or in any out-house, yard or garden appertaining thereto, or to "suffer any such liquors or wines sold by him, or under his direction or authority, to be drank in his house or shop, or in any out-house, yard or garden appertaining thereto, *without having obtained a licence therefor as a tavern keeper.*" (*Id.* 680, § 16.) This offence of selling to be drank in particular places, or allowing liquor already sold to be drank in any such place, was not touched by the act of 1845, but remained as it was before the passage of that act. No prosecution, penal or criminal, for this offence, could at any time have been founded on this statute, although it was quite otherwise as to the offence of selling by retail *without licence.* Where a town had voted no licence, offences of the latter description, except for the sale of "metheglin, currant wine, cherry wine or cider," might have been prosecuted on the revised statutes, or on the act of 1845, either being equally applicable to such cases.

It was urged on the argument of this case, as it had been on previous occasions, that the act of 1845 did no more than impose a pecuniary penalty for selling by retail without licence, and did not subject the offender to a criminal prosecution. That act, as we have seen, declared that for such sales, where *no licence* had been voted, the offender should "be liable to all the penalties imposed by" the revised statutes "for selling strong or spirituous liquors or wines, *without licence.*" Now, the revised statutes imposed but a single specific pecuniary penalty, for such a sale, although it was also declared to be a misdemeanor and punishable by fine and imprisonment. (*Id.* 680, § 15; 682, § 25.) The word *penalties* was very improperly used in the act of 1845, if it was intended thereby to subject the seller to a specific penalty of twenty-five dollars "for

selling strong or spirituous liquors or wines, without licence," and not make the illegal sale a crime. We think the legislature intended more than simply to impose such a penalty, and that it was intended the act should be a misdemeanor as well as a penal offence. If such was not the object, the plural word *penalties* has no proper meaning in the statute. It certainly was not intended to abate the rigor of the former law, although such must be the effect of the act of 1845, unless the word *penalties* extended the criminal as well as penal provisions of the revised statutes to sales by retail in places where no *licence* had been voted. We think such was the intention of the legislature in passing the act of 1845, and therefore that such sales as fall within that act are crimes as well as penal offences. In this respect we concur in the opinion expressed by this court in the case of *Hodgman* v. *The People*, at the last January term.(*a*)

So far we agree with the court below, and see no ground for interfering with the judgment rendered. But a more difficult question remains to be considered.

One Baker was sworn and examined as a witness on the part of the prosecution. His evidence, as originally given, amounted to very little any way, and if it did not tend to prove the defendant guilty of the alleged offence, it equally failed to exculpate him from what had been sworn to by others. In fact what the witness had said left the case pretty much where it found it.

This witness in giving his evidence remarked that he "was sworn before the grand jury;" when the district attorney asked him what he testified to on that occasion. The counsel for the defendant objected to the inquiry, but the objection was overruled, and an exception taken. The witness then proceeded to state that he had testified before the grand jury that he at several times purchased brandy of the defendant, and paid him for it, thus showing that the evidence given on these two occasions, if not flatly contradictory, was wholly inconsistent with itself.

_____

(*a*) 4 *Denio*, 235; and see *The People* v. *Townsey*, (*ante p.* 70.)

The People v. Safford.

The object of the district attorney, in the inquiry made by him, must have been to discredit the witness by showing that his statement before the grand jury was at variance with the evidence he had just given. What the witness had sworn to before the grand jury, could on no principle be taken as evidence to prove the defendant guilty of the crime charged against him. Of itself, what the witness had formerly stated, was irrelevant to the question of guilty or not guilty, although it might be called out with a view to impeach his credit. The question then arises, can a public prosecutor be allowed, in a criminal case, to give evidence for the sole purpose of destroying the credit of his own witness?

All the authorities agree that a party will not be allowed to discredit his own witness by evidence of general bad character. (1 *Phil. Ev.* 308, 309 ; 1 *Stark. Ev. Phil. ed.* 1842, *p.* 216 ; 1 *Greenlf. Ev.* §§ 442, 443.) And they equally agree that a party is not bound to abide by the statement of his own witness, but may if he can, show the fact to be different by other witnesses in the cause. (*Id. Cowen & Hill's Notes,* 535, *p.* 780.) But upon the particular question now before us, that is, whether a party may show that his own witness has previously made statements contradicting, or inconsistent with his evidence, the books are far enough from being agreed. The party against whom a witness is called, may undoubtedly do so, as he also may attack the general character of the witness, both being allowable for the same purpose, that is to destroy his credibility. But that is not the case here : the attack, in this instance, was made by the party on his own witness.

Upon this subject adjudged cases and treatises upon evidence are irreconcilable, some holding that a party may in all cases impeach his own witness in this manner, although not by evidence of general bad character ; while others would limit the right to those who are conducting prosecutions for crimes. On the other hand, there are not wanting authorities utterly opposed to the reception of such evidence under any and all circumstances. I shall not attempt to classify the cases or books on the point, but simply refer to some of them for the

convenience of those who desire to examine the question more fully. (1 *Phil. Ev.* 309, 310, 311; *Cowen & Hill's Notes*, 536, 537, *p.* 781, 2; 1 *Stark. Ev.* 216, 220, *App.* 606; 1 *Greenlf. Ev.* § 444; *Rosc. Cr. Ev.* 66, 166, *and cases referred to in these works.*)

As this point can not be decided on authority, some principle must be found on which we can rest our opinion, and we think a party should in no case be allowed to give evidence for the sole purpose of impeaching his own witness. On this ground a party is precluded from giving evidence that his witness is of bad character: nor should he be permitted to give evidence of any description which can only tend to discredit the witness. It is competent to the party to show the truth of the fact, whatever may have been said by a witness on his part, for such evidence is directly pertinent to the issue to be determined. Besides, this description of evidence, does not necessarily tend to impeach or discredit the witness. He may honestly be mistaken, and to correct his error does by no means involve the witness in the crime of perjury, but may be reconcilable with the most perfect integrity and good faith. Evidence that contradictory statements have been made by a witness, is only allowable with a view to his impeachment, a ground not open to the party producing the witness. The answer to an offer like that from such a party, should be given in the words of Mr. Justice Patterson in a similar case—"he is your witness, and you must treat him as such." (*Regina* v. *Farr*, 8 *Carr. & Payne* 768.)

We think the court erred in allowing the public prosecutor thus to attack his witness, and on that ground alone the judgment must be reversed and a *venire de novo* awarded.

Ordered accordingly.