SINGLE VS. SCHNEIDER and another.

REPLEVIN: *Change in form of property — Measure of compensation.*
DAMAGES: *Rule of, in replevin.*

1. In replevin, where a recovery of the *value* of the property is sought, this court adopts the rule that the usual measure of recovery is the value before the property was improved by defendant's labor and skill; and this even in cases where it was taken knowingly and wilfully, without color or claim of right; except where such taking was accompanied by special circumstances (as of malice or insult), which would justify *exemplary* damages.

2. Where logs are knowingly and wilfully cut by one man from another's land, the value of the *stumpage* will be the ordinary measure of recovery.

APPEAL from the Circuit Court for *Winnebago* County.

Replevin for lumber.  The facts appear in the opinion, and in the former report of the same case, 24 Wis., 299.  The jury found for the plaintiff, and found that 58,000 feet of the logs were cut by defendants in good faith, by mistake, and 59,350 feet were cut wilfully, and not by mistake.  A motion for a new trial being overruled, defendants appealed from the judgment.

*Felker & Weisbrod,* for appellant.

*G. L. Park* and *D. Lloyd Jones, contra.*

COLE, J.  This case has been before this court at a previous term, and will be found reported in the 24 Wis., 299.  The facts as developed on the second trial, were substantially the same as are the first.  Among other things, the court charged, in respect to the rule of damages, as follows: "When a person cuts logs upon the land of another, without a lawful right so to do, but in good faith, believing that he has the right to, he is entitled to have deducted from the value of the property replevied, such cost and expense and labor as he has bestowed upon the property to get it into its enhanced value.  But on the other hand, if knowingly and wilfully, without color or claim of right, he cuts logs upon the land of another,

the owner is entitled to recover the enhanced value of the property in whatever shape he may put it, provided he reclaims the specific property."

The sole question in the case arises upon the last paragraph of this charge, which was excepted to on the trial. The jury found under this charge that 58 M. feet of the logs were cut by the defendants in good faith by mistake, and that a little over 59 M. feet were cut wilfully and not by mistake; and the plaintiff had judgment for the improved value of the property on that quantity.

The counsel for the defendant contends that, so far as the measure of damages is concerned, it is quite immaterial whether the logs were cut intentionally or through mistake — that the damages given in law as compensation for an injury should be precisely commensurate with the injury, neither more nor less; and that the plaintiff is not entitled to recover the value of the property in its improved state, under the circumstances of this case. He concedes that, if there was anything tending to show that the trespass was wanton or malicious — committed under circumstances of insult or aggravation, then, upon the authorities, exemplary damages might be allowed in the discretion of the jury, which might exceed or fall below the value of the property enhanced by the labor of the defendants. But he claims that when a person, though intentionally, cuts pine logs upon the wild, unoccupied land of another, to say, as a matter of right, the owner shall recover the enhanced value of the property manufactured into lumber, or into the most expensive furniture, is a rule contrary to the principles of natural justice, and not in accordance with the doctrine of the common law.

We are inclined to adopt this view of the matter, although we are well aware that by so doing we lay down a rule in conflict with some adjudications, which may be found. But it seems to us that, if the owner is entirely indemnified for the injury he has sustained, it is quite immaterial whether the logs were cut by mistake or intentionally, unless in the latter case

the trespass was of such a character as to make the doctrine of exemplary damages applicable. This was the view expressed by Mr. Justice PAINE in *Weymouth v. Chicago & Northwestern R. R. Co.*, 17 Wis., 550, 555; and it seems to us that it is consonant with sound principle and natural justice. It is true, that was an action of trover, and this is an action of replevin. But here the defendants gave the undertaking under the statute, and retained possession of the property. The judgment was in the alternative, for the delivery of the property to the plaintiff in case delivery could be had, or for its value. The plaintiff does not really expect to recover the specific property, and therefore there is no valid reason for a distinction between this case and that of trover, as regards the rule of damages; it should be the same in both cases. And consequently, whether the logs were cut by mistake or intentionally is immaterial as affecting the amount of the recovery, unless the element of exemplary damages enters into the case, which is not contended for by the counsel for the plaintiff. But he insists that it is the settled rule of the common law in the case of a voluntary trespass, that the owner may re-take the property in its improved state, or recover its enhanced value, so long as its identity remains.

This was the great question discussed in the celebrated case of *Silsbury v. McCoon*, reported in 6 Hill, 425, 4 Denio,' 332, and 3 N. Y., 379. The question in that case was, whether, if one wrongfully took another's grain and manufactured it into whisky, the property was changed by the process of manufacture into a different species of property, so that it could not be retaken by the former owner in its changed or improved condition. The case was argued by the most eminent counsel—twice in the court of appeals—and underwent a most thorough examination by the judges, who were divided in opinion, both in the supreme court and the court of last resort. BRONSON, Ch. J., who delivered the prevailing opinion when the cause was before the supreme court the second time, and also delivered a

dissenting opinion in the court of appeals, while willing to concede for the purposes of that case the correctness of the rule that if one wrongfully take the chattel of another, and merely change its form and value by bestowing his labor and skill upon it without destroying its identity, the original proprietor might either retake the property, or recover its value in its state of improvement, yet he did not wish to be understood as admitting this to be the proper rule. As an original question, he thought the owner should either reclaim the property before the new possessor has greatly increased its value, either by bestowing his labor and skill upon it, or by joining it to other materials of his own; or else that he should be restricted to a remedy by action for damages which he has sustained. The majority, however, of the court of appeals held to the doctrine that one man could not gain any title to the property of another upon the principle of accession, if he took the other's property wilfully as a trespasser, though he might, by his skill and labor, increase its value a thousand fold. But it seems to us, to allow the owner to appropriate the labor of the wrongdoer in this way is an unjust measure of redress. For, as remarked by Ch. J. BRONSON, "the question is not, as it has been sometimes artfully put, whether the common law will allow the owner to be unjustly deprived of his property, or will give encouragement to a wilful trespasser. It will do neither. But, in protecting the owner and punishing the wrongdoer, our law gives such rules as are capable of practical application, and are best calculated to render exact justice to both parties. The proper inquiry is, in what matter and to what extent should the trespasser be punished; and what should be the kind and measure of redress to the injured party? A trespasser who takes iron ore and converts it into watch springs, by which its value is increased a thousand fold, should not be hanged, nor should he lose the whole of the new product. Either punishment would be too great. Nor should the owner of the ore have the watch springs, for it would be more than a just measure of redress." 4 Denio, p. 336.

So, in the case before us, the rule seems rigorous and unnecessarily severe, which says the defendants must lose all their labor bestowed upon the logs, providing they knew at the time they cut them that they did not own the land. Let the plaintiff have full compensation for the trespass, which ordinarily is the value of the stumpage. *Hungerford v. Redford*, 29 Wis., 345. But it is inconsistent, as it appears to us, with the general principles and policy of the law, to allow the plaintiff to recover the value of the logs manufactured into lumber. He waited until this was done, and now seeks to secure for himself the labor and expense of another. And he invokes the aid of the principle that a wilful trespasser can acquire no title or rights in the property of another, however much he may have added to its value by his labor and workmanship. There were no circumstances of fraud, malice or wanton injury attending the trespass, and the value of the logs cut—or, as it is sometimes called, the value of the stumpage, would seem to be the measure of just compensation. In this case that is readily ascertained from the verdict of the jury. The plaintiff must remit the value of the labor bestowed upon 59,350 feet of logs as found by the jury, or there must be a new trial.

*By the Court*—Ordered accordingly.