Wright, J.
We have not deemed it necessary to solve all the nice and difficult questions that relate to the -plaintiffs’ (Barbours’) title to this land. Whether or not they had the legal, they did also claim an equitable title, and there, was some evidence-to sustain the claim. This ques *575 tion of fact was left to the jury, who found upon it for plaintiffs below. We are not clear that this finding was so palpably against the weight of evidence as to justify interference by us. We therefore assume that plaintiffs had title sufficient to maintain the action in that respect, and proceed to the second point, the rule of damages.
The petition, it will be noticed, is not as for a trespass to real estate, but to recover the value of the wood and timber stolen; the action throughout was treated as one to recover that value, and the case is so treated here.
Upon the point now to be determined, the case is thus: A large amount of wood was cut down upon plaintiffs’ land, and stolen. The thieves work it up into cord-wood and ties, thus increasing its value three-fold. The depredators then sell it to the railroad company, who is entirely innocent in the whole matter. The real owner now sues the railroad company for the property taken from his land. Shall he recover one dollar or three ?
It is said upon the one hand to be an universal rule of law that a man’s property can not betaken from him without his consent, unless by law, and that stealing can convey no title to the thief. In Silsbury v. McCoon, 3 Comst. 381, it is said : “ It is an elementary principle in the law of all civilized communities, that no man can be deprived of his property, except by his own voluntary act, or by operation of law. The thief who steals a chattel, or the trespasser who takes it by force, acquires no title by such wrongful taking.” It is then argued that the thief, having none himself, could convey no title to any other person taking it however innocently. Hence when the railroad company obtained the property they obtained what was the plaintiffs’, and they could have replevied it, increased in value as it was, by the labor of the thief. If this were so, then it is argued that the company were liable for the value of the wood in its improved condition, enhanced to the extent of three-fold.
If the owners were bringing this action against the thieves, perhaps it might bo conceded that the full amount *576 could be recovered. This we understand to be upon the principle “ in odium spoliatoris.” The thief will not be allowed to have anything by virtue of his own wrong, and if he has spent his labor upon stolen goods, he shall not profit by it. It is his own loss.
“ The English law will not allow one mau to gain a title to the property of another, upon the principle of accession, if he took the other’s property willfully as a trespasser.” 2 Kent, 363.
But it seems to be well understood that the rights of the parties are made to depend, to a great extent, upon the intent with which the conversion of property has been brought about. If it was taken mala fide, by theft, or with a willful purpose to do wrong, the consequences are different from those which follow upon the act done under an honest mistake, and perhaps it is as wise to punish the robber as to protect the innocent.
In treating of confusion of goods, Blackstone speaks of the difference between cases where admixture is by consent of both parties, and where it is by the willful act of one, and in regard to the latter the author says : “ Our law, to guard against fraud, gives the entire property, without any account to him whose original dominion is invaded.” In case of the confusion by consent, it is otherwise, and each party retains his interest.
Mr. Cooley, in his note to page 404, book 2, recognizes the same distinction between a fraudulent purpose, and an innocent mistake. The same distinction is made in 2 Kent, 363; Sedg. Dam. 484.
Field on Damages, section 818, says : “ There should certainly be a distinction between a case of mere technical conversion, when, perhaps, the defendant acts in good faith, and-that of a willful conversion and wrong done by the defendant.”
The cases as to what is the proper rule of damages, where property has been taken and by the taker improved iu condition or enhanced in value, are numerous, but a reference *577 to some will show some of the difficulties attending the subject.
In Silsbury v. McCoon, the corn of one Wood had been manufactured into whisky by plaintiff. The defendants, as judgment creditors of Wood, took it, and plaintiff sued for the value of the whisky. The case is first reported 6 Hill, 425. Here it is decided that the change from corn to whisky was a change of identity, and transferred the property to plaintiffs, who were the manufacturers producing the change. This decision goes wholly upon the question of identity.
There is a learned note to this case, which discusses the question of innocent and wrongful conversion, and the citations there given from Puffendorf, Justinian, and Wood’s Institutes are apposite.
This case is again reported in 4 Denio, 332. Here the idea that the rights of the parties depeud upon motive or intention is flatly repudiated, the court holding that as long as the owner can trace his property, he may regain it; thus again making identity the criterion.
The case is reversed in 3-Comstock, 381, upon the ground that the animus with which the corn was converted was an important element, and that if plaintiffs, when they took it, knew that they had no right to it, they could obtain no title, although by the manufacture into whisky they had changed the identity.
The simple fact, therefore, that the property can be traced into its improved state is not always sufficient to insure a recovery of the improved article or its value.
It must be remarked, however, that the text books do assert that the proposition of identity is the controlling one. Kent says : “ It was a principle settled as early as the time of the Tear Books, that whatever alteration of form any property had undergone, the owner might seize it in its new shape, and be entitled to it in its state of improvement, if he could prove the identity of the original materials ; as if leather be made into shoes, of cloth into a coat, *578 or a tree be squared into timber.” 2 Kent, 263; Betts v. Lee, 5 Johns. 348; 2 Blk. 404. It will, however, appear that other considerations enter into the solution of the question.
In Hyde v. Corkson, 21 Barb. 92, it is held that, “in acquiring title to property by accession, the law makes a distinction between a willful and an involuntary wrong-doer. The former can never acquire the title, however great the change wrought in the original article may be, while the latter may.”
“ Where a manufacturer has expended his money and labor, in good faith, upon property, in pursuance of a contract with the owner, he can not be regarded as a wrongdoer, or deprived of the enhanced value which he has given to the property, in an action by the owner, sounding in damages.”
It is said, in the course of the opinion, that the “ distinction between a willful and an involuntary wrong-doer runs through the authorities, and stands upon the principle that a party can obtain no right by his own wrong.” (p. 105.)
Martin v. Porter, 5 M. & W. 351, was a case where defendant, in working his coal mine, broke through the barrier, and took the coal under the land belonging to plaintiff. Plaintiff recovered the full value, without any deduction to defendant for his expenses in getting the coal. But in Hilton v. Woods, L. R., 4 Eq. 440, the rule in Martin v. Porter is limited to cases of fraudulent conduct. And such is the effect of the case of Morgan v. Powell, 3 Ad. & El. (N. S.) 278; and in Wood v. Morewood, 3 Ad. & El. (N. S.) 441, Parke, B., told the jury that “ if there was fraud or negligence on the part of defendant, they might give, as damages under the count' in trover, the value of the coals at the time they first became chattels, on the principle laid down in Martin v. Porter; but if they thought the defendant not guilty of fraud or negligence, but acted fairly and honestly, in the full belief that he had the right to do what he did, they might give the fair value of the coals, as if the coal-fields had been purchased from the plaintiff.”
*579 In Hilton v. Woods, L. R., 4 Eq. 432, the head-note is: “ In assessing compensation for coal already gotten by defendant, the court being of opinion that he had worked it inadvertently, and not fraudulently, held that he was to pay only the fair value of such coal, as if he had purchased the mine from defendant.”
Malius, Y. C., says : “ There is much difficulty as to the mode of assessing the compensation to an owner of coal which has been improperly worked by the owner of an adjoining mine. It is clear upon the authorities that a different principle is applicable when the coal is taken inadvertently, or, as in the present case, under a bona fide belief of title, and when it is taken fraudulently, with a full knowledge on the part of the taker that he is doing wrong, or, in other words, committing a robbery.”
In these English cases, the right of plaintiff to recover the increased value of the coal — that is, the value occasioned by the expense of mining, is made to depend on the animus of the party committing the .trespass. If he stole, he loses his labor and money. If he made an honest mistake, he does not incur that loss, and the owner only recovers the value of the coal without its accession. There would seem to be a very short way out of. these difficulties, if the question of identity was the only one. There was no trouble in the owner identifying his coal, but this does not entitle him to recover its value, increased by being mined, except in case of bad faith. It should be noted that Jegon v. Vivian, L. R., 6 Ch. App. 742, seems disposed to limit this rule of damage to cases at law, not applying it in equity. There are a number of coal cases in Pennsylvania. In Forsyth v. Wells, 41 Penn. St. 291, Lowrie, C. J., after discussing the conflict in the cases, says: “We prefer the rule in Wood v. Morewood, where Parke, B., decided, in a case of trover for taking coals, that if the defendant acted fairly and honestly, in the full belief of his right, then the measure of damages is the fair value of the coals, as if the coal-field had been purchased from the plaintiffs.”
“ Where the defendant’s conduct, measüred by the ordi *580 nary standard of morality and care, which is the standard of the law, is not chargeable with fraud, violence, or willful negligence, or wrong, the value of the property taken and converted is the just measure of compensation. If raw material has, after appropriation and without such using, been changed by manufacture into a new species of property, as grain into whisky, grapes into wine, fur into hats, hides into leather, or trees into lumber, the law either refuses the action of trover for the new article, or limits the recovery to the value of the original article.
“ Where there is no wrongful purpose or wrongful negligence in the defendant, compensation for the real injury done is the purpose of all remedies; and so long as we bear this in mind, we shall have but little difficulty in managing the forms of action, so as to secure a fair result^. If the defendant in this case was guilty of no intentional wrong, he ought not to have been charged with the value of the coal, after he had been at the expense of mining it, but only with its value in place, and with such other damage to the land as its mining may have caused.”
This case also holds that no change in the form of action can vary the rule of damages.
In Herdie v. Young, 55 Penn. St. 176, the defendant had been cutting timber on his own tract, and by mistake cut some upon an adjoining tract of plaintiff. The trespass was not willful or wanton, but was in a bona fide belief of title. The logs had been driven to the boom, and plaintiff sought to recover their value at that place, which was of course enhanced by the labor and expense defendant had put upon them. But it was held that the rule of damages was the value of the timber in the stump when the trees were cut;
Agnew, C. J., says: If defendant “ denies that his trespass was willful or wanton, and claims a right to the additional value given to the chattel by his labor and money in converting and transporting it to the place where it is replevied, he has it in his power to bring the damages of the plaintiff to their true standard. In a case of inadver *581 tent trespass, or one done under a bona fide, but mistaken, belief of right, this would generally be the value of the logs at the boom, less the cost of cutting, hauling, aud driving to the boom. Such a standard of damages, growing out of the nature of the act and of the form of action, is reasonable, and does justice to both parties. It saves to the otherwise innocent defendant his labor and money, and gives to the owner the enhancement of the value of his property, growing out of other circumstances, such as a rise in the market price, a difference in price between localities, or other adventitious causes.” Coleman’s Appeal, 62 Penn. St. 252-278.
In the case of Barton Coal Co. v. Walter Cox, 39 Md. 1, the question is much discussed and the authorities reviewed.
In Heard v. James, 49 Miss. 236, the rule of damages in case of conversion is said to be determined by the animus of the party trespassing. If the act was in good faith, upon some supposed right or claim, or error, the rule is the value of the property when taken; but. if the taking be characterized by malice or oppression, damages may be punitive, and in an action no allowance will be made the defendant, for any increased value bestowed on the property by his skill and labor.
In this case trees had been cut down on plaintiff’s land and made into staves, and the question was whether plaintiff should recover as damages the value of the staves, or only of the trees as they stood ou his ground. The plaintiff was allowed to recover the full value, allowing defendants nothing for their labor in working up the timber into staves, and upon the principle stated. The court, says, “ The conduct of defendant was willful, utterly regardless of'the rights of the plaintiff.”
That the intent of the defendant is material in regard to damages, has always been recognized in our law. Bpon this is founded the whole idea of exemplary damages. We know it has been strenuously urged iu what has been called “ the speculative notions of fanciful writers ” (McBride v. McLaughlin, 5 Watts, 375; Sedgw. 463), that punishment *582 belongs only to the administration of criminal law, and has no proper place in that civil procedure which adjusts only the rights of parties; but the principle is too firmly.settled to be controverted now. Pratt v. Pond, 42 Conn. 318; Walker v. Fuller, 29 Ark. 448; Grund v. Van Vleck, 69 Ill. 478. And yet the rule should be carefully applied, as it may leave to courts and juries to determine the extent of punishment unrestricted by the well-defined limits of statutory enactment. Therefore it is that there are authorities holding that even in cases of willful trespass, if the trespasser has made a large increase in the value of the property by his labor, it will not be allowed that it shall all go to the original owner, because it is said to be unjust.
The fact that the trespasser is to lose the labor and expense he has put upon property he has wrongfully taken, results as a punishment to him for what he has done ; on this ground the original owner recovers the increased value, not because of any rights in him, but because the law gives this infliction, as a terror to offenders. Tet the punishment must be proportioned in some way to the circumstances of the case, and a proper inquiry is, iu what manner and to what extent should the. trespasser suffer, and conversely what should be the kind and measure of redress to the injured party.
Brown, J., puts this case (Silsbury v. Me Coon, 4 Den. 337) : A trespasser who takes iron ore and converts it into watch-springs, by which its value is increased a thousand fold, should not be hanged; nor should he lose the whole of the new product. Either punishment would be too great. Nor should the owner of the ore have the watch-springs, for it would be more than a just measure of redress.
The Supreme Court of Wisconsin adopts the same idea. The case of Single v. Schneider, 30 Wis. 570, is a case where logs were willfully cut from the premises of another*, they say it is unnecessax’ily severe that defendant should lose the value of all their labor, s. c. 24 Wis. 299; Weymouth v. C. & N. W. R. R., 17 Wis. 550; Hungerford v. Redford, 29 Wis, 345. An interesting discussion of the ques *583 tion of damages by Judge Cooly is to be found, in. Wetherbee v. Green, 22 Mich. 811, the syllabus of which is: “ No test which satisfies the reason of the law can be applied in the adjustment of questions of title to chattels, by accession, unless it keeps in view the circumstances of relative values. The purpose of the law will not be gained by establishing arbitrary distinctions based upon physical reasons; but its object must be to adjust the redress afforded to one party and the penalty inflicted on the other, as near as the circumstances will permit, to rules of subt stantial. justice, if very great increase in value in the change of property from one form to another, is of more importance in determining the rights of parties in it, than any inexpensive chemical change of mechanical transformation, however radical. And where timber of the value of $25 had been, in the exercise of what was supposed to be proper authority, converted into hoops, of the value of $700, the title to the property, in its converted form, passed to ihe party by whose labor, in good faith, the change had been wrought.” In this case it was a conceded fact that the taking of the timber was in good faith, defendant supposing that he had a license so to do from the orvner of the land. In this, however, it . appears he was mistaken. Judge Cooley discusses very fully the distinction between cases where property is taken innocently, and where it is taken dishonestly, and recognizes the proposition that the rule of damages is varied accordingly. Ho also discusses the rule already so frequently spoken of, that w'hen the owner can trace the identity of his property, he may reclaim it however it may be increased in value. But this he seems to think an unsatisfactory test, the purpose of the law being to adjust the redress afforded to the one party, and the penalty inflicted upon the other, as near as the circumstances will permit, to the rules of substantial justice. If one had a stick of timber stolen, and could distinctly trace it into a house being newly built, the identification might be beyond peradveuture, yet no one would claim that the owner of the stick could recover the whole *584 house, either in ejectment or its value in damages. Or a particular piece of wood might be followed into an organ, but the owner of the wood could not replevy the organ. Where the right to the improved article is the point in issue, certainly the question should be considered, how much the property or labor of each has contributed to make it what it is, at least in those cases where no bad faith exists.
It can not therefore be true, in every instance, that because a man can trace his property, he can always recover it, regardless of the circumstances under which it has come into the hands of the present holder, regardless of its improved condition, and regardless of the injury an absolute and unconditional recaption may occasion. ■ The law as Judge Cooley says, endeavors to do what is right and just between the parties, and while it will seek to compensate the real owner, will not occasion outrage to one who has been innocent.
It may be that if these owners had found their wood in the hands of the trespassers, it might have been retaken, or its value as cord wood recovered ; but if so it would be upon the principle “ in odium, spoliatoristhe thief could gain nothing by his own wrong, and therefore the results of his labor go to the owner of the property. But this principle can not apply where an innocent purchaser, comes into the case, for the simple reason that he has done no wrong.
It is very time that the willful trespasser or thief can convey no title to one to whom he sells, however innocent the purchaser may be. But the question right here is, what does “title” in this connection mean? The original owner has the “ title ” to his timber, and, as against the thief, the title to the results of the thief’s labor. The wrong-doer, as it were, being estopped from setting up any claim by virtue of the wrong he has done. Against the innocent purchaser from the thief, the original owner still has the “ title ” to his timber, but by virtue of what does he now have “ title ” to the thief’s labor? The estoppel, so to call it, being created by fraud or wrong, exists only against the *585 one guilty of that fraud or wrong, which the purchaser is not, and while it is effectual against 'the wrong-doer, the reason of it does not exist as against the innocent man, as to whom it therefore fails. As Judge Cooley says, it does not comport with notions of justice and equity, that against those who have done no wrong, these owners should recover three ti mes the value of what they have lost. They have never spent one cent of money, nor one hour of labor, in changing this timber worth one dollar, into cord wood worth three. All this was done by some one else, and why should the owners recover for it? If they are compensated for what they have lost, and all they have lost, they are certainly fully paid. Woolsey v. Seeley, Wright, 360. And this is all they should be allowed to recover.
Eor this error, in the charge on the subject of damages, the judgment is reversed.