GUSTIN *v.* EMBURY-CLARK LUMBER CO.

1. REPLEVIN—TITLE OF PLAINTIFF—SUFFICIENCY OF EVIDENCE.
    Where, in replevin for timber cut from certain lands, plaintiff shows title to the land by deed and title to the timber by bill of sale, both acquired after the timber was cut, and it appears that the tax title on which defendant relies is void, plaintiff is entitled to verdict.

2. SAME—RECOVERY BY PLAINTIFF—MEASURE OF RECOVERY.
    Plaintiff, in replevin for timber cut on his land, purposely delayed bringing suit until great value had been added to the timber by defendant in running, driving, towing, and manufacturing, and then, though but about 1-14 of the logs had been actually manufactured, seized the full amount claimed in manufactured lumber, though his logs were easily accessible in the booms, attempting to excuse his course by claiming defendant requested him to do so and pointed out the lumber piles he was to seize. The testimony merely showed that defendant's officer pointed out certain piles of lumber in which was mixed some of that cut from the logs claimed by plaintiff, and also pointed out the logs mixed in the booms. The property was returned to defendant, plaintiff failing to give the statutory bond. *Held,* that plaintiff was entitled to recover only for such part of the lumber seized as was manufactured from his own logs.

3. SAME—TRIAL—INSTRUCTIONS.

> The writ describing no logs, but only certain specified kinds of lumber, etc., an instruction that plaintiff was entitled to just the verdict he would have had had he seized his just proportion of sawed and unsawed lumber was inapplicable, could only have confused the jury, and was erroneous.

4. SAME—DAMAGES—GOOD FAITH OF DEFENDANT—EVIDENCE.

> As bearing on defendant's good faith as affecting the measure of damages, defendant should have been allowed to show that the tax title on which it relied was the only record title to the land, and that it purchased this without knowledge of plaintiff's claim.

5. SAME — EXTENT OF RECOVERY — FAILURE TO GIVE BOND — INCREASE OF VALUE BY DEFENDANT.

> Where plaintiff in replevin stands by without disclosing his claim to the property, and permits defendant to add great value to it, and then brings suit without any intention of taking the property, and allows it to be returned to defendant in default of the bond provided by section 10658, 3 Comp. Laws, as amended (§ 11, Act No. 246, Pub. Acts 1899), and demands judgment for the value of the property under section 10680, as amended (§ 34 Id.), he is entitled to the value of the property actually seized under the writ, at the place where seized, less the increase of value after conversion added by defendant's labor or expense to the time of commencement of suit.

Error to Cheboygan; Shepherd, J. Submitted June 21, 1905. (Docket No. 44.) Decided July 23, 1906.

Replevin by Henry K. Gustin against the Embury-Clark Lumber Company. There was judgment for plaintiff, and defendant brings error. Reversed.

*Frost & Sprague* and *G. Covey, Jr.*, for appellant.

*C. S. Reilley*, for appellee.

McALVAY, J. Plaintiff brought replevin against defendant, and recovered judgment for certain property described in the writ as lumber, cedar shingles, cedar posts, ties, and poles. This property, plaintiff claims, was wrongfully cut and carried away from a certain

description of land in Presque Isle county, which he claimed to own; and he also claimed title by bill of sale from his grantor to the property in dispute cut from the land before he purchased. At the time this timber was cut plaintiff did not own the land or the timber, although he claims he thought he did. January 17, 1903, he purchased this 40.27 acres subject to taxes, and received the memorandum of the sale of the cut timber, January 26, 1903. The original patent had not been recorded, nor, as far as we find from this record, was the deed to plaintiff ever recorded. Plaintiff discovered that the timber had been cut just before he purchased. After his purchase he went upon the land, looked over the cutting, saw the men at work putting logs into the river, without any protest, and without making any claim.

Plaintiff's first notice that he represented any interest in this property was a letter to Embury and Martin, February 4, 1903. On March 11, 1903, he wrote defendant company. The logs were practically all in the water before these letters were written. The suit was commenced August 15, 1903. The writ described lumber of different varieties, cedar shingles, ties, posts, and poles. At the time the property was taken under the writ about 7,000,000 feet of different kinds of logs, cedar blocks, ties, posts, and poles had been brought to the mill from the booms, and, including the logs and cedar from this land, were in a mass together, of which mass about one-fourteenth had already been manufactured. The return of the sheriff shows that only lumber, cedar shingles, and the cedar ties, posts, and poles were taken under the writ; that an inventory and appraisal were made; that a certified copy of the writ was served on the president of the defendant company, and that after the appraisal and notice, the plaintiff failing to give the statutory bond, the property was returned to defendant.

On the part of the defendant it was claimed that in July, 1902, James Inglis and others sold by warranty timber deed all the standing timber on this and other lands to

the firm of Embury and Martin, for full consideration. Jobbers of Embury and Martin cut and put the timber afloat in the Ocqueoc river during the winter of 1902 and 1903, where it was sold by Embury and Martin to defendant company, which took charge of this body of logs, together with a large quantity of other forest products in the water, and drove them down to the mouth of the river, then put them into booms all mixed together and towed them on Lake Huron to Cheboygan for manufacture at the mill of O. M. Clark & Son. This timber when cut and put into the water was marked by Embury and Martin with their mark, known as the "egg mark," and became mixed with about 800,000 feet of other logs marked in the same manner. Defendant further claimed that a State tax deed to its grantors was the only record title to the land: that it purchased the timber in good faith for a valuable consideration, and offered the tax deed and bill of sale in evidence to show such good faith.

The court refused to allow such showing to be made. Upon this ruling of the court several errors are assigned. Error is also assigned upon the refusal of the court to allow defendant, in making proof of the value of the timber, to show what it was worth as standing timber. There are many other assignments of error, of which those deemed material will be considered. It was shown that the title of defendant's grantors which was a tax title was invalid, and that plaintiff was the owner of the original title to the land purchased after the timber was cut, and also owner, by bill of sale, of this timber cut from the land. The court properly held that plaintiff was entitled to recover in this suit, and that the only question to determine as a question of fact was the amount of his recovery.

It is not disputed in this case that plaintiff purposely delayed bringing suit until great value had been added to this timber by defendant in running, driving, towing, and manufacturing, and seized under his writ the full amount of the timber claimed in manufactured lumber, although

but about one-fourteenth had been actually manufactured, seizing none of the logs in the booms, although they might readily have been selected by the mark from a large mass of logs of like quality with which they were mixed. Plaintiff attempts to excuse the seizure of the entire amount claimed in lumber, by claiming defendant requested him to do so, and pointed out the lumber piles he should take under the writ. All of the testimony is returned. Upon this point the only testimony is that of the plaintiff, a deputy sheriff, and an officer of defendant company. It simply shows that an officer of the company pointed out certain piles of lumber in which was mixed some lumber cut from logs with the egg-shaped mark; and also pointed out the logs mixed in the booms, stating, "he was anxious to have the thing commenced and get it over as soon as possible." The court submitted to the jury, both by his charge and special requests, the question of this request and designation of property to be taken, as authorizing the seizure of all the lumber mentioned in the writ. This was not warranted by the evidence. About one-fourteenth of plaintiff's saw logs had been manufactured at the time this lumber was taken under the writ by the officer. It was not delivered to plaintiff because he gave no bond, and was returned by the officer to the defendant. Plaintiff then could recover in this suit only for the value of such part of his property manufactured into lumber (estimated in the record to be about one-fourteenth of all his saw logs) and for such cedar posts, ties, and poles as were actually seized under the writ. No cedar shingles appear to be claimed by plaintiff. As no logs were taken under the writ it will be unnecessary to discuss the questions of law applying to cases where property is intermingled with other of like kind and quality.

Error is assigned upon the following charge to the jury :

"Mr. Gustin is entitled to just the verdict he would have had had he seized his just proportion of sawed and unsawed lumber."

The property described in the writ was certain specified

kinds of lumber, cedar shingles, and cedar posts, ties, and poles. No logs were described. Upon no theory of the case could such a charge be applicable. Its tendency was to confuse the jury, and it was erroneous.

As bearing upon the measure of damages, which will be discussed later, we think that the good faith of defendant is material. It offered to show that for full consideration it purchased all the title there was of record of this land without any knowledge of plaintiff's claim. It should have been allowed to show this, not for the purpose of defeating plaintiff's title, but as bearing upon its good faith.

As already stated in this opinion, plaintiff was entitled to recover. The court was in error, however, in charging the jury as to the measure of his damages. Plaintiff began his suit not expecting or desiring to recover his property. He frankly states that he waited until he could recover the greatest value. His testimony is " if they saw fit to increase the value of this property at their own peril, I waited until that lumber was manufactured." He also states that he did not give a bond because he thought perhaps defendant would offer a counter bond. He says, " the way we viewed the form of action, there was no necessity of our putting up a bond as the property would remain in the hands of defendant anyway." Section 10658, 3 Comp. Laws, which provides that if the plaintiff in replevin fails after the appraisal to furnish the required bond the property shall be returned to the person from whom it was taken," has been materially amended by Act No. 246, Pub. Acts 1899, § 11, which provides among other things that defendant may give a bond and retain the property. Section 10680, by the same act, has also been amended, and now provides:

" SEC. 34. Whenever the plaintiff or defendant shall be entitled to a return or surrender of the property replevied, instead of taking judgment for such return or surrender as above provided, he may take judgment for the value of the property replevied."

Plaintiff in this case took a judgment for the value of the property.

Wisconsin and Pennsylvania have statutes practically the same as this act of 1899. The question of the rule of damages in similar cases has been passed upon in those States. In a Wisconsin case upon practically the same facts as in the case at bar the court said:

"Upon these facts it seems contrary to the dictates of natural justice that plaintiff should be allowed to wait quietly until the defendants had manufactured the logs into lumber enhancing their value four or five fold and then recover against them that entire value. True, it is generally recognized that a wrong-doer cannot, by changing the form of another's property, change the title. The owner may pursue it and reclaim it specifically by whatever remedy the law gives him for that purpose. If he gets it, it is his. But the apparent injustice of allowing one to thus avail himself of the labor and money of another in cases similar to this has led to a modification of this stringent rule of ownership wherever the question is resolved into one of mere compensation in money for whatever injury the party may have suffered. * * * To apply that rule here would have required the property to have been assessed at the full value of the lumber, deducting the expense of all that the defendants had done upon it down to the time the suit was begun." *Single* v. *Schneider*, 24 Wis. 299, 30 Wis. 570.

*Herdic* v. *Young*, 55 Pa. 176; Cobbey on Replevin, §§ 907, 909, 913; Shinn on Replevin, § 626. While in the cases above cited defendants had given a bond under the statute, yet as the judgment in this case was taken for value alone it is within the reasoning of the cases cited. The conduct and testimony of plaintiff show that he never intended to take a return of the property. Before the statute was amended this court was inclined toward this doctrine. In a replevin case it held:

"It will be seen by the statute cited that the plaintiff may elect to recover the property or the value thereof. The record shows that upon the trial the plaintiff elected to take a judgment for the value. The authorities seem to be uniform that in such case the measure of damages

is the value of the property at the date of conversion and interest upon such value to date of verdict." *Hanselman* v. *Kegel*, 60 Mich. 540, and cases cited.

This case has been cited and approved in *Just* v. *Porter*, 64 Mich. 568; *Nitz* v. *Bolton*, 71 Mich. 388. In the case at bar we approve the rule laid down by the Wisconsin court in *Single* v. *Schneider*, supra. The plaintiff is entitled to recover the value of his property which was actually taken under the writ of replevin, at the place where taken, deducting any increase of value after conversion added by defendant's labor or expense to the time of commencement of suit.

Judgment is reversed, and a new trial ordered.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.