This cause originated in a Justice's Court, and comes here upon the permission of the General Term in the fourth department, without any indication of the grounds of the judgment affirmed at the General Term. We are left to ascertain them by an examination of the case itself. One question thus presented relates to the jurisdiction of the justice. The defendant insists that, under the Code as it stood in 1870, the justice's jurisdiction did not extend to injuries to the person. On this point we think the plaintiff right. The Code of 1848 (§ 53, sub. 2) gave the justice jurisdiction of an action for damages for an injury to the person or to real or personal property if the damages claimed did not exceed $100. The phrase, "for damages for an injury to the person," remained unchanged through all the mutations of the Code until 1862, when the phraseology was changed. The subdivision was then made to read, "an action for damages for injury to rights pertaining to the person or to personal or real property, if the damages claimed do not exceed $200." This subdivision remained unchanged when the present suit was brought. We think it entirely clear that one of the rights which pertain to persons is the right not to be subjected to bodily injury. Blackstone, in his enumeration of the rights of persons, begins with the right of personal security, which he defines as consisting in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health and his reputation. (1 Bl. Com., 129.) We are, therefore, of opinion that the objection to the justice's jurisdiction was not well taken.
The request was properly refused, to charge the jury that the plaintiff was under a duty to look back and ascertain the distance of the horse and wagon before jumping to get out of the way. In place of this the judge charged that, if it appeared the horse and wagon were so distant that she had time to look around, then she was bound to do so before *Page 588 
jumping; but if the horse and wagon were right upon her, or so close to her that she had not time to look around, and instinctively jumped on one side to avoid immediate danger, then she was justified in jumping before she looked. The jury, under this submission, have found that there was no time to look around; and there can be no rule of law which imposes it as a duty upon one, over whom danger impends by the negligence of another, to incur greater danger by delaying his efforts to avoid it until its exact nature and measure are ascertained. The instinctive effort on the part of the plaintiff to avoid the danger did not relieve the defendant from responsibility.
Another question of more importance arises upon the defendant's exception to evidence admitted under the following circumstances: The plaintiff called one Willard, who proved that he, in the defendant's employment, drove the horse and wagon which, as she claimed, occasioned her injury. He was dismissed from the stand, and the plaintiff, after further evidence, rested. The defendant, in producing his evidence, recalled Willard, who testified that he did not, on the occasion in question, drive on the sidewalk. On cross-examination by plaintiff, he denied that in conversation with one McConnell, a very few minutes after the injury was sustained by the plaintiff, he used certain expressions in speaking of what had happened, which apparently conflicted, or which, at least, might reasonably be contended to conflict, with his denial that he had been driving on the sidewalk. The defendant having rested, the plaintiff called McConnell and asked him if Willard used the expression imputed to him by the question put on cross-examination. This was objected to by the defendant as an attempt to contradict a witness upon a collateral inquiry, and, also, as an attempt by the plaintiff to impeach her own witness. The question was allowed, and the witness said that Willard did say what the question supposed. The first ground of objection is not well taken. Showing that a witness has made statements out of court variant from and conflicting with *Page 589 
what he testifies in court, on a point material to the issue, is admissible when the witness has been preliminary interrogated upon the point and does not admit making such statement. (Patchin v. Astor M. Ins. Co., 13 N.Y., 268; 1 Greenleaf's Ev., § 449.) But the rule thus stated is applicable to the witness of the opposing party. The object of such testimony is to impeach the credit of the witness. (People v. Vane, 12 Wendell, 81.) And the second ground of the exception presents the question, whether that course is open to a party in respect to a witness whom he has called. Whatever differences of opinion have existed elsewhere, I understand the rule in this State to be settled, that a party may not impeach, either by general evidence or by proof of contradictory statements out of court, a witness whom he has presented to the court as worthy of credit. He may contradict him as to a fact material in the cause, although the effect of that proof may be to discredit him, but he cannot adduce such a contradiction when it is only material as it bears upon his credibility. Thus, in this case, the plaintiff was at liberty to contradict the witness as to his not having driven on the walk, because that fact was generally material in the cause, but was not at liberty to show that, after the affair was over, he had made a statement which conceded that he had driven on the walk; because that statement did not bear upon the question whether he did or did not drive upon the walk, but only upon the question whether his testimony that he did not was worthy of belief. In the People v. Safford (5 Denio, 112), where the point was material, the court, after adverting to the conflict of cases and text books on the subject, proceed as is said to consider it on principle and determine that a party cannot prove contradictory statements made by his own witness. The court hold that such evidence is only allowable with a view to the impeachment of the witness, and is not open to the party producing him. In Thompson v. Blanchard (4 N.Y., 303, 311) a new trial was granted in this court for a violation of the rule in question. The plaintiff had called one Wheeler as a witness, who, among other things, had stated favorably *Page 590 
to the defendant certain declarations made on the execution of papers material in that controversy. The plaintiff, under objections, had been allowed to prove a contradictory version of what took place at the time in question, and also to show that Wheeler had, subsequently, made statements contradictory to his testimony on the trial. For the admission of this latter evidence a new trial was granted. The court, after stating the general rule and showing that in accordance with it the plaintiff could contradict Wheeler's evidence as to what took place, proceed to say, the plaintiff went further and gave evidence that Wheeler, at a subsequent time, made statements contradictory of the statements to which he testified. Such evidence is only allowable, in any case, with a view to the impeachment of the witness; a ground not open to the party producing the witness.
There is a class of cases in which a party who calls a witness has been allowed to show, by his own examination at least, if not by introducing proof by others, that he had previously stated the facts in a different manner; but this seems to stand upon the ground of surprise, as contrary to what the party had a right or had been led to believe he would testify, or of deceit through the influence of the other party. (1 Greenleaf, § 444 and note 1;Melhuish v. Collier, 15 Ad. El. [N.R.], 878 [69 Eng. Com. Law].) But no such special ground of exception appears in this case.
In conclusion, I can find in the authorities no ground for saying that Willard was not the plaintiff's witness throughout the trial, nor for holding that she was at liberty to impeach him in the manner attempted.
The judgment must be reversed and a new trial ordered.
All concur.
Judgment reversed. *Page 591