ANNIE F. DARRAGH, Respondent, v. REUBEN ROSS, Appellant.

*Supreme Court, Second Department, General Term, December 9, 1889.*

1. *Evidence. Parol.*—In an action to recover for money had and received, the defendant's admission that he had received more than the face of a mortgage, and had collected more than he should have done, is not inadmissible as varying the written instrument.

2. *Same.*—Nor is evidence that less has been received on a check than its face called for, or that nothing has been received on it, objectionable on that ground.

3. *Same. Contradiction.*—A material statement, brought out on the cross-examination of a witness, may be shown to be false by other testimony.

4. *Money had and received.*—A person who receives money for a specific purpose and keeps it, without applying it to such object, is liable in an action for money had and received.

Appeal from judgment in favor of plaintiff and from order denying motion for a new trial.

Action for money had and received by defendant for the use of plaintiff.

The defendant's witness, Vernam, on cross-examination testified that in the transactions in controversy he was acting for plaintiff and her husband. Thereafter, on the examination of plaintiff's husband, he was allowed to testify that Vernam had no such authority.

The charge excepted to is: " That is, having this mortgage for $3,500 either upon this or upon other property, if Mr. Reuben Ross received $1,700 and agreed to apply it in reducing the mortgage and he did not do so, then he has misappropriated the money, and a judgment can be recovered against him for the amount with interest.

" On the other hand, if you believe Mr. Darragh's state-

ment and his theory that this mortgage was paid by him to Mr. Ross out of money which he carried around in his pocket; he says that he always had $2,000 or thereabouts in his pocket, then Mr. Ross has $1,700 of the plaintiff's money which he has not accounted for.

" But if the names of John Ross and John Webb were simply a cover for Reuben Ross, and he put the title in them to hold for himself, he must account for that money. If you believe the facts so demand."

*James M. Hunt*, for appellant.

*S. E. Fairfield*, for respondent.

BARNARD, P. J.—This action is brought to recover for money had and received by the defendant for plaintiff's use.

The amount claimed is made up of four different sums amounting to $11,515, upon which a payment is acknowledged in the complaint of $4,000, leaving a balance of $7,515.

The answer is a general denial and payment. The evidence shows that the plaintiff was the owner of lands at Rockaway, and she sold a part of it to Bester and Mayer, and another portion to a Mr. Shear. The Bester and Mayer sale required the payment of a $1,300 mortgage on the property to give them a clear title. The plaintiff testified that she gave the money to defendant to pay this mortgage and that he failed to do it, and she was compelled to and did pay it out of the $10,000, which was the purchase-price of the property sold Bester and Mayer. The amount due on the mortgage was $1,700, and that defendant received $1,700 therefor, which he applied to his own use.

There was a bond and mortgage for $7,000 given plaintiff on the Bester and Mayer sale. This mortgage was assigned to John Ross, defendant's brother, and by him assigned to John Webb. Over $8,000 was received on this mortgage;

while only $4,000 had been paid plaintiff on it and the assignment was made to secure this $4,000. The plaintiff claims only $3,000 had been loaned on it. As to the first of these items the parties are in direct variance, and as to the second item the defendant claims that John Ross was the real assignee of the mortgage and who made the loan of $4,000. There is proof tending to show that the real party was Reuben Ross and his brother's name was merely a cover.

The plaintiff claims that $1,000 was paid by defendant on account of this assignment subsequently, and that the $4,-000 payment was made up in this way. There is the same dispute in respect to the $600 mortgage growing out of the Mayer and Bester sale. As to the two transactions growing out of the sale to Shear, the same unaccountable variance exists between the parties in this evidence.

The plaintiff says that defendant secured $1,000 and $700 out of the moneys secured on the sale. The defendant says he secured the $1,000 mortgage for the plaintiff's husband's debts, and he produced a receipt signed by the plaintiff acknowledging the receipt of the money. The judge charged the jury that this transaction was clear and clean, and further, that as to the seven hundred, no reason appeared why this sum was paid to the defendant.

Under this conflicting evidence the jury found for the plaintiff $3,200. Unless some error was committed on the trial it is a case where the verdict of the jury should stand. The tribunal to settle questions of fact had passed upon the case, where the dispute is unusually sharp and one party or the other mistaken in their testimony. The fact that the papers support the defendant is not controlling. Papers do not always represent the real transaction, and the jury have found that they did not in this case.

It is not erroneous to permit a witness to testify that the defendant admitted that he had received more than the face of the $7,000 mortgage, and that he had collected a little more than he had a right to collect. It was also proper to

826    DARRAGH v. ROSS.

Note on " The Right of a Party to Contradict His Own Witness."

permit evidence that less was received on a check than its face called for, or even that nothing had been received for it. The exception, therefore, is not sustained by the principle that such evidence is objectionable for varying a written paper. It is competent for the plaintiff to prove that the witness, Vernam, had no authority from her even if he had stated that he had upon his own cross-examination. It was a correct rule of law which was given in the portion of the charge excepted to by the defendant. It is merely that if the defendant received plaintiff's money for a specific purpose and kept the same, without applying it, he would be liable to plaintiff.

There was no error in the refusal to postpone the trial. The question of the agency of the plaintiff's husband to receive payments on account of his wife's business in the matter involved in this action was not an issue. Payments to him, if made, were treated as payments to her, and proof of his power to receive is abundant. The judge made no allusion to such a question, and the plaintiff testifies, " my husband did all the business."

The question being one purely of fact, and the record disclosing no error upon the trial or in the charge of the trial judge, the judgment should be affirmed, with costs.

PRATT, J., concurs.

NOTE ON THE RIGHT OF A PARTY TO CONTRADICT HIS OWN WITNESS.

Sometimes rather loose language has been indulged in to the general effect that a party cannot impeach his own witness. Becker v. Koch, 104 N. Y. 394. But, when an examination is made as to the limits of the rule, the result will be found to be that it only prohibits this impeachment in three cases : (1) The calling of witnesses to impeach the general character of the witness; (2) The proof of prior contradictory statements by him; (3) A contradiction of the witness by another where the only effect is to impeach and not to give any material evidence upon any issue in the case. Id.

The rule, in regard to the first class, rests upon the theory that, when a

party calls a witness, he presents him to the jury as worthy of belief, and to allow him to call witnesses thereafter to impeach his general character as a man, would be to permit an experiment to be made upon the jury by producing a person as worthy of belief, whom he knows and has witnesses to prove to the contrary, and, if his testimony is favorable, to get the benefit of it, and if the reverse, to overwhelm it by the impeaching witnesses. Id.

As to the second class, the non-admissibility of such evidence in the courts of this state is not open to discussion. Id. But the authorities in England were formerly in conflict. Many of the judges considered it allowable to prove prior contradictory statements by a witness, but the weight of authority was against it. Parliament passed an act permitting just such evidence under certain restrictions. Id.

As to the third of the above classes, it is not admissible even in the case of a witness called by the other side, to impeach him by proof of prior contradictory statements on immaterial or collateral issues. There is not much difference in the two cases, and therefore, no reason why it should be allowed with reference to one's own witness. Id. But all the cases concur in the right of a party to contradict his own witness by calling witnesses to prove a fact, material to the issue, to be otherwise than as sworn to by him, even when the necessary effect is to impeach him. Id.

A party, who calls his opponent as a witness, thereby vouches to the court that he is worthy of credence, and is not at liberty to impeach him. Thalheimer *v.* Klapetsky, 59 Hun, 619.

A party cannot be allowed to insist that his own witness is not to be believed. Hunt *v.* Fish, 4 Barb. 324.

In this case, the court said : " The witness was doubtless strongly in the interest of the plaintiff, and had he been called by the plaintiff, his testimony would have been subject to much just criticism. The defendants have, however, made him their own witness, and must take his testimony as he has given it. Had the defendants not called this witness, they might have argued that the referee should have disregarded his testimony, if it had been inconsistent or improbable. But they cannot now do this. He has sworn that Mr. Hunt was a *bona fide* holder, and the defendants cannot be heard to insist that he is not to be believed. They had the right, if surprised by his testimony, to show by other witnesses that the facts were otherwise; but they cannot impeach their own witness, either directly or indirectly."

Where a party calls a person as a witness and produces his sworn testimony to the court, he cannot say that such witness is untruthful and unworthy of belief. Pollock *v.* Pollock, 71 N. Y. 137. That the witness has been mistaken in his testimony may be argued, and may be shown by that of other witnesses. Id. But he may not be impeached or assailed. Id.

If a party put upon the stand a witness, who is for any reason assailable, that party asserts or admits the credibility of the witness. Id.; Fordham *v.* Smith, 44 How. 472; 46 N. Y. 683; Thompson *v.* Blanchard, 4 Id. 303; Varick *v.* Jackson, 2 Wend. 166–201.

Note on " The Right of a Party to Contradict His Own Witness."

A party may not impeach, either by general evidence or by proof of contradictory statements out of court, a witness whom he has presented to the court as worthy of credit. Coulter v. American M. Un. Ex. Co., 56 N. Y. 585. He may contradict him as to a fact material in the cause, though the effect of that proof may be to discredit him, but he cannot adduce such a contradiction, when it is only material as it bears upon his credibility. Id.

In this case, an action was brought to recover damages for injuries alleged to have been caused by the negligence of one of defendant's servants. It appeared that plaintiff was walking on the sidewalk of a street, in the City of Syracuse, when an express wagon belonging to defendant, driven rapidly upon the sidewalk, came up behind her. She sprang sideways to escape the danger, and, in so doing, struck her head against the wall of a building and was injured.

Upon the trial, the driver of the express wagon was called by plaintiff to prove that he was in the employ of defendant. He was subsequently called as a witness for defendant and testified that he did not drive upon the sidewalk. Upon his cross-examination by plaintiff, he was asked if he did not make a declaration to one McConnell substantially admitting that he did drive upon the walk. This he denied. After defendant rested, McConnell was called as a witness for plaintiff, and testified, against specific objection, to the making of the declarations specified. The court, on appeal, held that, while the plaintiff was at liberty to contradict the witness as to his not having driven on the walk, because that fact was generally material in the cause, he was not at liberty to show that, after the affair was over, he had made a statement that he had driven on the sidewalk. Such statement did not bear upon the question whether he did or did not drive upon the walk, but only upon the question whether his testimony that he did not do so was worthy of belief.

The general rule of evidence is that, when a party calls a witness for the purpose of proving by him his cause of action, he thereby presents him to the court and jury as worthy of belief. Sherry v. Fredericks, 47 Hun, 631. The law will not permit the party afterwards to impeach his general reputation for truth or impugn his credibility by general evidence tending to show him to be unworthy of belief. Id. To this general rule there are some exceptions. Its application is limited and only prohibits the impeachment in the following manner : (1) The calling of a witness to impeach the general character of the witness; (2) The proof of prior contradictory statements by him; (3) The contradiction of the witness by another where the only effect is to impeach and not to give any material evidence upon any issue in the case. Id.

In Cross v. Cross, 108 N. Y. 628, an action was brought for a limited divorce, on the ground of abandonment. A separation occurred, which evinced a settled determination of the parties to live apart. Whether the result sprang from an abandonment of the wife by the husband, or of the husband by the wife, was a difficult inquiry, but purely a question of fact. The defendant insisted, on appeal, that, when the plaintiff called him as a witness, she gave him credit as such, and so became bound by his evidence

that he did not abandon his wife, and sought in good faith and patiently a restoration of their marital relations. But the court held that, by calling him as a witness, the plaintiff did not become forced to admit as true every fact to which he testified. While not at liberty to impeach his character for truth, she was at liberty to dispute specific facts, though sworn to by him, and the trial court had the right to confront his statement of his mental conclusion with the facts and circumstances of his conduct, his letters and declarations, and determine from the whole evidence whether he did form a settled determination to abandon his wife. Id. He was both a hostile and a deeply interested witness, and all his testimony was a proper subject of consideration, with freedom to believe or doubt and reject. Id.

With regard to adverse witnesses, whom the party, by the exigencies of the case, is obliged to call, it is well settled that all the rules, applicable to the examination of other witnesses, do not, in their strictness, apply. Becker *v.* Koch, *ante.* Such a witness may be cross-examined, and leading questions may be put to him by the party calling him, for the reason that he is adverse and that the danger, arising from such a mode of examination by the party calling a friendly or unbiased witness, does not exist. Id.

Where a witness, called by a party through necessity, is adverse to and biased against him, the rule applicable may be stated as follows : What favorable facts the party calling him obtains from such a witness may be justly regarded as wrung from a reluctant and unwilling man, while those, which are unfavorable, may be treated by the jury, with just that degree of belief which they may think is deserved, considering their nature and the circumstances of the case. Becker *v.* Koch, *ante ;* Sherry *v.* Fredericks, *ante.*

While a party may not impeach a witness called by him, he may prove a fact contrary to the recollection and testimony of such witness. Campbell *v.* City of Syracuse, 20 W. Dig. 449.

The reason of the rule which prohibits a party from impeaching a witness introduced by him, by proving that the witness is a person of generally bad character or of a bad reputation for truth and veracity, is that, by presenting a person as a witness in a court of justice, the party impliedly vouches that he is a creditable person, and ought not to be heard, after experimenting with the witness and finding that his testimony is unsatisfactory, to discredit him by proving that he is not worthy of belief.

There is a class of cases, in which a party who calls a witness has been allowed to show, by his own examination at least, if not by introducing proof by others, that he had previously stated the facts in a different manner. Coulter *v.* American M. Un. Ex. Co., *ante.* But this seems to stand upon the ground of surprise, as contrary to what the party had a right or had been led to believe he would testify, or of deceit through the influence of the other party. Id.

In Tice *v.* Dromgoole, 33 Hun, 365, it was held that a party cannot impeach his own witness by proving contradictory statements made by him. He may show that the witness is mistaken and contradict him as to the particular fact which he testified to be true. Id. ; Thompson *v.* Blanchard,

*ante ;* People *v.* Safford, 5 Denio, 112 ; Sanchez *v.* People, 22 N. Y. 147 ;
Pollock *v.* Pollock, *ante.*   The party asserts or admits the credibility of the
witness he puts upon the stand.   Id.

In Thompson *v.* Blanchard, *ante,* the plaintiff called one Wheeler as a
witness, who, among other things, stated favorably to the defendant cer-
tain declarations made on the execution of papers material in the contro-
versy.   The plaintiff, under objections, was allowed to prove a contradictory
version of what took place at the time in question, and also to show that
Wheeler had, subsequently, made statements contradictory to his testimony
on the trial.   Upon appeal, the court, for the admission of this latter evi-
dence, granted a new trial.   It was held that, in accordance with the gen-
eral rule, plaintiff could contradict Wheeler's evidence as to what took
place, but evidence that he, at a subsequent time, made contradictory state-
ments, is only allowable in any case, with a view to the impeachment of
the witness, which is a course not open to the party producing the wit-
ness.

In Morris *v.* Wells, 54 Hun, 634, it was held that, where the only purpose
of evidence offered by a party is to affect the credibility of his own witness
by the proof of contradictory statements, such evidence is not admissible
for that purpose.

The right should exist to show that a portion of the evidence of a party's
own witness is untrue, by comparing it with another portion of the evi-
dence of the same witness and with the other facts in the case.   Becker *v.*
Koch, *ante.*

The rule that a party cannot impeach his own witness is sometimes
ignorantly expressed in the statement that a party is bound by his own
witness.   There is no such rule of law as that a party is bound by his own
witness in the sense that he cannot contradict him by other testimony.   If
this was the rule, a party would call every witness in his behalf at the
most extreme peril.   If he was deprived of the means of righting the wrong
by proving by other witnesses the real truth of the case, it would always
be in the power of a treacherous witness to give away his rights.

It is, therefore, a rule that, while a party cannot impeach his own wit-
ness, he may always contradict him by other evidence.

In Branch *v.* Levy, 46 Supr. 428, an action was brought to recover dam-
ages for the non-delivery of coupons, which the plaintiffs claimed were
purchased from defendant's agent.   The defendants denied the agency and
alleged that they had sold the coupons to the person whom the plaintiffs
allege was their agent, and had no liability for his subsequent acts.   The
plaintiffs, on the trial, called one of the defendants, who testified that the
person selling the bonds to the plaintiffs was not the former's agent, but
that they had simply sold him the bonds.   The court held the plaintiff
concluded by this evidence and that they must take it as wholly credible ;
that credibility could not be divided, and that it was attached to the moral
character.

To say that credibility is part of the moral character and indivisible, is
to run counter to the well-established rule as to adverse witnesses, to which

Note on " The Right of a Party to Contradict His Own Witness."

reference was above made, whose testimony the jury may be asked to believe in part and to disbelieve the residue. Becker *v.* Koch, *ante.* The case of Branch *v.* Levy, *ante,* ought not to be followed. Id.

Where the witness is to be regarded as adverse to the party calling him, the same credit is not necessarily to be given to the testimony against such party as to that in his favor. Becker *v.* Koch, *ante.* In such case, it is a proper question for the jury as to what degree of faith should be given under the facts of the case to the explanatory testimony. Id.

It is a well-recognized exception to the rule that a party cannot discredit his own witness, but he will be allowed to show that his own witness is favorably affected toward the opposite party.

In De Meli *v.* De Meli, 120 N. Y. 485, it was held that the fact that the defendant was called as a witness by the plaintiff, when he gave certain testimony, did not conclude the latter on the question of his credibility on that subject. See Becker *v.* Koch, *ante.*

Upon an accounting in the surrogate's court, a witness was produced and examined on behalf of the objectors. He gave material testimony tending to support the objection, and also evidence not entirely favorable to the theory on which the account was assailed. The counsel for the objectors subsequently offered evidence bearing upon the relation between this witness and the executors, to show his bias or interest in that direction. It was received against the executors' objection and exception. The general term, on appeal, held that it was improperly received. Matter of Mellen, 56 Hun, 553.

A party, producing a witness and examining him quite at large, is not afterwards entitled to give evidence to impeach him. Id. Evidence may be given to prove the facts to be different from that obtained from the witness. And his mistakes and misstatements may be corrected by other proof. Id. But the party producing the witness cannot go so far as to introduce evidence tending to impeach him. Id.; Pollock *v.* Pollock, 71 N. Y. 137; Coulter *v.* American, etc., Ex. Co., *ante;* Tice *v.* Dromgoole, 33 Hun, 365. Evidence tending to establish a bias on the part of the witness against the party calling him, is testimony tending to impeach him. Hostile or prejudicial feelings may, in a proper case, be proved for this object. Shultz *v.* Third Ave. R. R. Co., 89 N. Y. 242; Miles *v.* Sackett, 30 Hun, 68.

Such evidence may always be given by the party against whom the witness is sworn and examined, to discredit his testimony either wholly or partially, but that cannot be done by the party in whose favor the witness has been produced, sworn and examined. Matter of Mellen, *ante.*

A party may frequently desire to call his adversary's witness to prove a particular fact, as, for instance, the genuineness of a signature. Shall the circumstance that he calls such witness for so limited a purpose preclude him from showing, on his general cross-examination of such witness, that he has, on previous occasions made statements inconsistent with those made in his direct testimony.

In People *v.* Safford, *ante,* where the point was material, the court con-

sidered the subject on principle and determined that a party cannot prove contradictory statements made by his own witness. It was held that such evidence is only allowable with a view to the impeachment of the witness, and is not open to the party producing him.

A party ought not to be estopped from impeaching a witness, whom he has been induced to call in his behalf by previous statements falsely or fraudulently made by such witness in respect of the matters undergoing inquiry.