## THE SUSQUEHANNA.

### THE NACOOCHEE.

(District Court, E. D. New York. January 13, 1905.)

1. Collision—Steam Vessels Crossing—Change of Course by Privileged Vessel.

The steamship Nacoochee and the ferry boats Princeton and Susqehanna were all passing down the North river in the daytime, on intersecting courses, the Nacoochee in the center and the Susquehanna on the west, thus being the privileged vessel. By agreement, understood by all, the Princeton crossed ahead of the Nacoochee; but, having no agreement with the Susquehanna, ported to pass under her stern, when the latter swung to port to pass under the stern of the Nacoochee, in accordance with an agreement between them not known to the Princeton. This movement was not made until the Princeton was within 400 or 500 feet, and to avoid collision she went astern, and was struck by the Nacoochee. Held, that the Susquehanna was in fault for changing her course in violation of the starboard hand rule without agreement with or notice to the Princeton, and that such fault was the proximate cause

of the collision, the Princeton having no other course open to her after the movement was made than to back as she did; that the Princeton was not in fault, such as to relieve the Susquehanna from full liability, her fault, if any, in failing to avoid the Nacoochee having been committed when in extremis, through the prior fault of the Susquehanna.

In Admiralty. Suit for collision.

Robinson, Biddle & Ward, William S. Montgomery, and Henry Galbraith Ward, for libelant.

Wheeler, Cortis & Haight and Charles S. Haight, for the Nacoochee.
Wilcox & Green and Herbert Green, for the Susquehanna.

THOMAS, District Judge. In the daytime three vessels started to go down the North river on intersecting courses. The steamship Nacoochee reached the middle of the river, and was descending on a course S. by W. or S. S. W. The ferryboat Princeton was going from Desbrosses street to Jersey City, on a S. W. course. The ferryboat Susquehanna was going from her slip on the New Jersey side, at a point about opposite Desbrosses street, to Chambers street, and her usual course was S. E. The Nacoochee's bow struck the starboard side of the Princeton about amidships, doing injury to the latter vessel, for which the libel was filed. The Princeton had passed safely the bows of the Nacoochee, and, to escape an impending collision with the Susquehanna, had gone astern across the Nacoochee's bow, stopped, and while trying to get in forward motion the collision occurred. Before the ferryboats changed their courses, as hereafter stated, the Susquehanna was on the starboard hand of the Nacoochee, while the Princeton had the Nacoochee and Susquehanna both on her starboard hand. Hence, as regards rights of way, it was the duty of the Princeton, the eastward vessel, to yield both to the Nacoochee and Susquehanna, and it was the duty of the Nacoochee, farther to the westward, in the center of the river, to yield to the Susquehanna. But it happened that the Susquehanna, upon a second signal of two whistles from the Nacoochee, yielded to the Nacoochee, while the Princeton, with the apparent consent of the Nacoochee, passed ahead of the latter. The Princeton signaled, to give the Susquehanna the right of way, and ported; but the Susquehanna swung to port, to yield to the Nacoochee. As a result, the bows of the Princeton and Susquehanna came within a few feet of each other, at about the center of the river, whereby the Princeton was compelled to go back, and did go back so far that she came in the way of the Nacoochee.

The Nacoochee blew two whistles. The Princeton thought they were for her, and probably answered them. The Susquehanna also considered that they were for the Princeton, and did not answer them. The Nacoochee blew two more. The Susquehanna thought that these signals were for her, and answered them. The Princeton assumed that they were for her, and alleges that she answered them, but probably did not. In any case, the Princeton, Susquehanna, and Nacoochee understood that the Princeton was to go ahead of the Nacoochee, as she did. But the Susquehanna arranged with the Nacoochee, by answering with two whistles the Nacoochee's last two whistles, to go under her stern, but made no arrangement to go under the Princeton's stern, and

she had no right to go under her stern without an understanding. In fact, the Susquehanna had no intention of signaling the Princeton, and did not signal her until the latter blew one whistle, and the boats were within some four or five hundred feet of each other.

The Susquehanna's proposition is that, even if the starboard rule had been applicable, it had ceased to be applicable by the Susquehanna swinging to port, and that the Princeton should have appreciated the Susquehanna's departure from her course, and have crossed the latter's bow on the flood tide. If the Susquehanna wished the Princeton to go ahead of her she should have signified it, unless the relation of the vessels had so changed as to demand that the Princeton should go ahead. The Susquehanna charges that the Princeton was trying to force her across the Nacoochee's bow, after the Susquehanna had agreed with the Nacoochee not to go there. But the Princeton was not a party to this agreement, nor was she aware of it. If the Susquehanna could not carry out her agreement with the Nacoochee, the Princeton was not bound to aid her, unless she was in some way advised in due time. If the Susquehanna was afraid of the Nacoochee's bow, if she went across the Princeton's bow, it was her duty to take measures that would insure her safety, and at the same time give the Princeton her due opportunity with reference to the starboard rule. But that was a problem for the Susquehanna to solve. She could not expect the navigators of other vessels to take the risk of crossing her bow, and justify her unexpressed expectation, on the ground that she would otherwise violate her agreement with another vessel by crossing such vessel's bow. If the Susquehanna was in a predicament it was of her own making, and if she wished the Princeton to take the right of way she should have notified her. The fact is that she never notified her before the Princeton whistled to her, and the Princeton did what vessels usually do under such circumstances, viz., kept prudently away from a privileged vessel's bow.

The foregoing has been written upon the assumption that the Susquehanna and Princeton were, when the Princeton blew one whistle, pursuing such courses that the Princeton was bound to observe the starboard rule. But the Susquehanna claims that at the time the Princeton blew the one whistle the Susquehanna was above the Princeton, and had the latter a little on the starboard hand, and bases this assertion on the alleged fact that the Susquehanna had already swung to port, to go under the stern of the Nacoochee, and that the Princeton, having timely notice of this change of relations, should have kept her course across the Susquehanna's bow. The pivotal question is whether, when the Princeton gave one whistle swinging to starboard, the relation of the vessels had changed so that the Princeton should, in the use of due diligence, have been aware of it, and have kept her course. If so, the Susquehanna is acquitted of initial fault; otherwise not. The chart shows that the course of the Susquehanna between her two stations was southeasterly; that the course of the Princeton was southwesterly. They were regular ferryboats, each operated on one of the busiest lines crossing the river. Many times each day each plied between New York and New Jersey. The master of each was a skilled pilot of many years experience. Each had been accustomed to see

the other and pass her presumptively on innumerable occasions. Each knew that when the boats were on their regular courses the Susquehanna had the right of way. Indeed, the pilot of the Susquehanna, not by any statement extracted by the court and assented to by him, but of his own accord, stated:

"I had the same right over the Nacoochee that I had over the ferryboat. Q. So that under the law you had the right, both as to the Nacoochee and the ferryboat, of holding your course right to Chambers street? A. Exactly."

He does not pretend otherwise, except as his swinging changed the relation. So it comes back to this: Did he swing in time to give the Princeton notice? He says that the master of the Princeton—

"Ported his wheel just at the time he blew the one whistle. Q. At that time you were under the swing to starboard? A. I was swinging up river; I was swinging up river when he blew the one whistle to me, and I stopped my boat and backed under a jingle. * * * Q. How much before he blew you the whistle—how long before that—did you begin to swing? A. Half a minute, perhaps. Q. 'S 1' is the position before you began to swing, and 'S' is the position of swinging at the time you got the one whistle? A. Yes, sir."

The reference is to a diagram made by him. The diagram places the Susquehanna on a practically easterly course, while the Princeton's bow is somewhat southward, and well to the eastward of the Susquehanna, on a course slightly south of west. He further testified:

"Just as I saw the position the ship (the Nacoochee) was in—the swing he had—I slowed down immediately after ringing up full speed, and ran slow almost straight out of my slip, calculating to go astern of the ship before any whistles were exchanged."

Again he testified:

"Q. How were you heading when you began to swing? A. S. S. E. I had got a slight swing down river from my slip towards the Chambers street slip. I had hauled down about that much, and was swinging the other way."

This shows that the Susquehanna headed below her usual S. E. course, and other evidence shows that she maintained her speed, for she started one minute later than the Princeton, and they met about opposite Beach street, in the center of the river, some four blocks below their starting point. There is no pretense of diminished speed on the part of the Princeton. The diagram shows the Susquehanna's heading as almost E. when she began to swing. How did the Susquehanna, on a flood tide, get where she was on the course indicated "S 1" in the diagram? Moreover, the Princeton was not heading, as the diagram shows, slightly south of west. Her course was S. W. Capt. Richardson himself states that the Princeton was heading for her slip when she blew one whistle. In another place he states that when the Susquehanna blew two whistles to the Nacoochee the Princeton was "a little on my starboard hand; a little bit on my starboard hand—not very much; almost ahead." He further testified:

"Q. How near was the Princeton to you when she blew one whistle? A. I judge she was two boat lengths away from me, if not more perhaps. Q. So you kept going on? A. I had a starboard swing—swinging to port at the time under a starboard wheel. I had a starboard wheel, and my boat was swinging up river towards the stern of the steamship, and when he blew

the one whistle it was impossible for me to overcome that swing—put my wheel hard aport and swing the other way."

He further explains:

"At that time it didn't appear to me the Princeton was interested in that at all, because as he was coming towards Jersey I was swinging away from him in answer to two whistles from the ship. If he watched me he would know just exactly what I intended to do. It didn't appear to me he was coming near me at all at the time, until he gave one whistle."

Capt. Day, of the Princeton, states:

"I didn't notice him swing until after I blowed the one whistle. I couldn't see his wheels, but at the moment I blew one whistle I saw him coming on the swing. Q. Did he swing before he blew? A. There was no swing I could notice before I blew the one whistle. He blew after me, answered with two whistles, and swung. Q. Did he swing before he blew his two whistles? A. About at the time I blew him one whistle I see she commenced to sheer towards me."

He further says:

"He was on my starboard, and he would be to the northward of me a little. * * * When I blew one whistle to the Susquehanna, and he answered with two, I put my helm aport, the moment I blowed the one whistle."

These captains agree that the Susquehanna was a little to the northward. It may be accepted that the Princeton blew one whistle to the Susquehanna when the boats were 400 or 500 feet apart; that the Princeton's pilot immediately thereafter discovered that the Susquehanna was swinging to port; that before that the Susquehanna had starboarded, and had begun to swing to port. Assume that, as the Susquehanna's captain states, the boats were three lengths or more (three of the Susquehanna's lengths would be 630 feet) apart when he began to swing, and that the Princeton's captain did not notice it until they were 400 or 500 feet apart, what should be the decision? It is considered that even then the Susquehanna was at fault, because she changed her course without signal to the Princeton. Considering the knowledge of the Princeton's captain of the destination of the Susquehanna, her customary course, the usual duty that rested on him, the presence of such duty until he discovered, using due vigilance, that the Susquehanna had swung, his just expectation that the Susquehanna would do what she usually did and what the law required her to do, viz., keep her course, it appears that the Susquehanna did not do her duty in swinging out of her course without informing the opposite boat, and that the Princeton's captain was not at fault that he did not in time appreciate the Susquehanna's intention and the fact that she had begun to swing out of her course. Of course, all this was well known to the Susquehanna's pilot. He knew that he had starboarded. He knew that his boat begun to respond to the starboard wheel. But this was not plain to the Princeton's master. He states that he did not see the swing until he had swung. It was a surprise to him. It was something that he did not and would not expect under the existing conditions. He was attentive to what the law required of him and was prepared to do it. The courses of the vessels up to the moment

justified his thought. He was justified in doing what he did. It would be a dangerous rule that would require a burdened vessel to avoid another by going under her stern, and yet condemn her because she did not perceive, when the vessels were so near together, that the privileged vessel had begun to change her course, and that such change was to be continued so as to reverse his duty. The rule would in such case be: "Watch the privileged vessel—the vessel bound to keep her course—and if when some six hundred feet away she change her course, instead of keeping it, as the law demands, cross her bow, or omit it at your peril." This puts too great a burden °on the Princeton. It subjects her, and yet makes her responsible if the burden is suddenly lifted. A vessel on an adverse tide may swing slightly from her general and regular course. It may not mean that she intends to abandon her course. The burdened vessel must be treated fairly, in view of her fixed obligations. If it is intended that she shall depart from her known duty, she must have signals or fair warning. The Susquehanna made no signal. She expected that the Princeton would be governed by her swinging out of the course she was pursuing. If there is any value in the starboard rule, that requires the privileged vessel to keep her course, it should be observed, unless she give full and fair notice that she intends to depart from it. The fault of the Susquehanna was not in yielding to the Nacoochee; it was not in her changing her course; it was in her changing it without due signal, when so near by. It was done too near the time when the Princeton would be expected to go to starboard. The change itself was not a timely announcement. The Susquehanna kept the Princeton in bond until it was too late to release her, and when the Princeton tried to discharge her obligation she found that the Susquehanna had left her course and stood in the way. It is too much to say that the Princeton should have grasped the situation. The situation was not made plain to the Princeton in time by the Susquehanna swinging. The Princeton acted as she was bidden; the Susquehanna acted as she was forbidden. If the Susquehanna's act was necessary, she should have arranged therefor with the Princeton. The Princeton was not obliged to appreciate the situation, and perceive that the Susquehanna was going to do, from necessity or otherwise, what ordinarily she would not do, and that the Princeton should on that account reverse her usual conduct.

These views lead to the conclusion that the Susquehanna brought the Princeton in peril of collision, and that to extricate herself the Princeton must back. If in going astern the Princeton, using such caution as the exigencies of the case and the excitement of the moment permitted, collided with another vessel, the Susquehanna's negligence would be the proximate cause. It would be like a person springing out of the way of a negligently driven wagon and striking another object (Coulter v. A. M. U. Express Co., 56 N. Y. 585), or a passenger jumping from a train, negligently brought into danger (Dyer v. Erie R. Co., 71 N. Y. 228). Such cases are numerous.

The Susquehanna wrongfully barred the way, and suddenly intercepted the Princeton's passage, whereby the Princeton, to avoid damage, turned aside, to her injury. But did the Princeton use the care demandable of a man of good judgment and prudence, under the circumstances? If she did not, her negligence intervened between the negligence of the Susquehanna and the injury, and was the proximate cause. It is difficult to escape the conclusion that after starting to back the navigators of the Princeton did not take notice of the Nacoochee until it was too late to avoid the collision, the flood tide and the Nacoochee's speed forward tending to bring the vessels together.

It is considered that the Princeton did not see the Nacoochee until a collision with her was inevitable, and when the Nacoochee was discovered an effort, probably duly vigilant, was made to pull forward out of her way. Hence the question is, was the Princeton excusable for not keeping in mind that she was backing across the Nacoochee's bow? The Princeton had passed the Nacoochee, so that the backs of those in the pilot house were turned to her, and unless such persons turned to look over their right shoulders they would not see the Nacoochee. But should a prudent man, a man of good judgment, be so disturbed by the collision just escaped that he would not look back to see whether anything was in the way of his going astern, especially as he did in fact know that another vessel was coming across his course astern? The navigators on the Princeton had a right, for the few seconds when the threatened collision was before their eyes, to put all their thoughts on that; but, as the gap widened between the ferryboats, should even an excited captain consider that he was backing right across the bows of a steamer which he had just passed, and that he should use some care to guard against her?

While it is concluded that the Princeton had passed the bow of the Nacoochee, it is not probable that the former's stern had cleared the Nacoochee's course more than 100 feet, and perhaps not so far, although the distance can be only approximately determined. When the Princeton's pilot saw a collision with the Susquehanna impending, what was before, and not what was behind or above, taxed all his faculties. His first duty was to go back instantly and with all power. There was no time for circumspection; there was no time to adjust distances with nicety; and that his vigorous action should carry him too far astern, and that his mind should be centered wholly upon his escape and the movement therefor, seems not inconsistent with what a competent pilot, even a pilot of requisite judgment and suitable mental poise, would do in such crisis. Looking back from the undisturbed survey of the events, it is easily seen how it all might have been better done; but at the moment of menacing catastrophe there was scanty opportunity for forethought, and in the present instance the wrongdoer should not be allowed to complain successfully that the unoffending person did not deliver himself more skillfully from the consequences of the wrong.

The libelant should have a decree against the Susquehanna, with costs. The libel as to the Nacoochee is dismissed, with costs.