TREMONT COAL & COKE CO. v. JOHNSON.

(Circuit Court of Appeals, Ninth Circuit. September 7, 1909.)

No. 1,656.

1. MASTER AND SERVANT (§ 129*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—PROXIMATE CAUSE OF INJURY.

Plaintiff, a miner employed by defendant, was coming out of the mine, riding on the front bumpers of a cable car being drawn up a slope, with his arm resting on the top edge of the car, when he was struck by a stream or sheet of water escaping from a defective joint in a pipe used for pumping water from the mine, which was supported along the roof of the tunnel, was thrown around to one side, and his arm was crushed against the roof timbers, which were some six inches above the top of the car. *Held* that, to render defendant liable for the injury, it was not necessary to show that the force of the water was such as to physically throw plaintiff around and bring his arm in contact with the timbers, but that it was sufficient if it caused him to instinctively throw up his arm.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

2. MASTER AND SERVANT (§ 217*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—ASSUMED RISK.

The fact that there had been a small leak in the pipe at the same place for some time was not sufficient to charge plaintiff as matter of law with assumption of the risk, where it had not before been such as to cause any reasonable apprehension of danger.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

3. MASTER AND SERVANT (§ 129*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—PROXIMATE CAUSE OF INJURY.

In such case the primary act of negligence was that of defendant in maintaining the pipe in its defective condition, which was a breach of its legal duty to furnish plaintiff with a reasonably safe passageway to and from his work, and was the proximate cause of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

In Error to the Circuit Court of the United States for the Northern Division of the Western District of Washington.

This is an action at law, brought by the plaintiff, Charles G. Johnson (defendant in error here) against the Tremont Coal & Coke Company, defendant (plaintiff in error here), for injuries received while employed in defendant's coal mine as a rock miner. The suit was originally commenced in the superior court for King county, Wash., and was transferred later to the Circuit Court of the United States for the Western District of Washington because of diversity of citizenship.

It appears from the evidence that plaintiff was employed by defendant in its coal mine as a rock miner; that he was a miner of about 17 or 18 years' experience, and had been working in the mine about a month before the accident happened; that the only means of ingress and egress to the work in the mine was the cable railway cars operated by defendant upon a track constructed down the slope running into the mine at an angle of about 45 degrees; that defendant maintained, in connection with its equipment for working the mine, an engine and pipe line for the purpose of pumping water from

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

172 F.—50

the mine as it accumulated at the bottom. This engine was situated at the surface of the mine, and the pipe line ran down the slope or drift to the bottom of the mine. It was a cast-iron pipe, flanged, and about eight inches in diameter, made up of a number of lengths of pipe. At the end of each length was a collar or flange, and these were fastened together with from six to eight bolts.

The testimony on the part of the plaintiff tended to show that the pipe line was not properly installed; that it was insecurely fastened, so that under the pulsation and throbbing of the pump it vibrated to a considerable extent —this constant vibration, together with the loosened joint, being the supposed cause of the break or leak. The leak was at a flange joint in the pipe, and from the constant jarring of the pipe one of the bolts holding the flange became loosened, which permitted the water to flow out in a thin sheet through the crevice between the two flanges. The evidence tended to show, further, that on the morning of July 18, 1906, plaintiff was returning to the surface after finishing his work on the night shift. He took a place upon one of the front bumpers of the car in going out of the mine. He was sitting on the front bumpers, with his back braced against the front end of the car; his right arm resting on the top edge of the car. When the car ascending the slope had reached a point about 250 feet from the surface, it encountered the water falling from the leak in the pipe, which struck plaintiff on the left side and twisted him around, so that his arm caught between the car and the beam. The stream had sufficient force to knock a person against the car. It put out the lights carried by those on the car. Plaintiff's arm was caught between the car and the timbering of the slope, and was broken at the wrist and permanently injured. The cross-beam where he was injured was about 6 inches above the top of the car. Plaintiff and other miners, on their way down to work on the night shift the evening before, noticed a leak at the point where the accident afterwards occurred; but it was not such a leak as they met on the trip up in the morning. It was customary for the miners to ride upon the front end or bumpers of the cars in going into and coming out of the mine. Instructions were given by the mine authorities that two men should ride on the front end of the front car coming out of the mine, because the front trucks were apt to leave the tracks and this tended to prevent it.

The evidence on the part of the defendant tended to show that this pipe line ran down some distance before it took an elbow; that a break or leak in the pipe occurred about three lengths above this elbow; that the water ran down the pipe and off the end of the elbow, making it appear as though the break was at the elbow; that the mine was known as a wet mine, and it was necessary to operate the pump continuously to keep the water down; that, although this leak was known to the mine authorities, it was not thought of sufficient importance to necessitate shutting down the pumping plant in order to repair it at that time.

The case was tried before a court and jury, and a verdict rendered against the defendant for the sum of $1,500. To this judgment the plaintiff in error prosecutes this writ of error.

Blattner & Chester, Shepard & Flett, and L. B. Da Ponte, for plaintiff in error.

Frank A. Steele and Harrison Bostwick, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The defendant contends that the evidence did not show that plaintiff was injured, substantially as alleged in his complaint, by having been knocked over by the force of a stream of water issuing from a vent in the pipe, but does show that the injury was due to the carelessness of plaintiff in permitting his arm to come in contact with the walls of the drift. The complaint alleged that:

"Said pipe, by reason of its faulty and insufficient construction, was broken at one of the joints thereof, and water flowing therefrom, by reason of the great pressure as a result of the pumping of water through it, struck the plaintiff with great force on the head and face, and he was thrown against the side of the car, where his right arm was caught between the car and the timbers of said slope and was broken at the wrist and permanently injured."

The complaint further charged the defendant with negligence in permitting the pipe to become unsafe and out of repair. The plaintiff testified:

"That the stream of water struck him with force enough to throw him around on the car and put out all the lights. His arm came between the timber and the car and was broken."

On cross-examination he testified:

"That he was sitting on the front bumpers, with his back braced against the front end of the car; his right arm resting on the top edge of the car. The water, striking him on the left side, twisted him around, so that his arm was caught between the car and the beam."

John Gillis testified:

"That he was on the car with plaintiff at the time plaintiff was injured—about 7 o'clock in the morning of July 18, 1906. That the car was coming up out of the slope. Plaintiff and Johnnie Pete, the pump boy, were riding on the front bumpers of the car, while he (witness) rode inside the car. That when they reached within 200 or 300 feet of the top of the drift there was a stream of water or something put out the front lights, and before he realized what had happened the water struck him in the face, and knocked his cap and light off his head, and turned his head over against the car, and left them in total darkness until they got to the top of the slope. After getting up out of the slope, and out of the car, the pump boy told him that plaintiff had hurt his arm; and witness looked at his arm, and plaintiff said that it happened as the lights went out."

This testimony describes the accident substantially as alleged in the complaint. It is true there is testimony on the part of the defendant describing the accident in different terms. John Pete was called as a witness on the part of the defendant. He testified:

"That he rode on the front bumper in question with the plaintiff at the time he was injured. Gillis was in the car. Plaintiff was sitting at witness' left. At the point where the old slope goes up, the water came down and put out their lights. When the water struck Johnson, it did not throw him around or change his position. He had his arm on the edge of the car before the water hit him. The water did not come in a violent stream, but in the form of a shower. At first, when he saw it, it seemed to be coming out of the joint above the beam; but he soon discovered that it was not, but out of the joint farther up the old slope."

The objections to the allegations of plaintiff's complaint and the evidence introduced in support thereof is the fact that the evidence introduced on the part of the defendant tends to show that there was no leak in the pipe near the place of accident, and, therefore, no force of water coming from the pipe at that point; but the leak or break was some 50 feet further up the pipe, from which point the water flowed along the pipe to an elbow opposite the place of accident, where the water fell in a shower, giving the appearance of a leak or break in the pipe at that point. Conceding that the testimony of the defendant does appear to establish this fact, we do not see how it is material here. The

plaintiff did not, in his complaint or in his testimony, attempt to locate the leak in the pipe. All he did was to locate the place where he was injured as the place where he was struck by the falling water. And conceding, further, that he may have overestimated the force of the water, under the impression that the leak in the pipe was at the place of the accident, we do not see how that fact, if it is a fact, presents a question for this court to determine.

The evidence tended to show that defendant was negligent in maintaining the pipe in a defective condition. The question, then, was whether there was a sufficient force of water coming down at the place of the injury to cause plaintiff to change his position, so that his arm was thrown out, and caught between the car and the beam, and broken; and that was a question of fact for the jury to determine. The fall of the water need not have been at the point of the leak or break in the pipe, and need not have been of sufficient power as to have physically forced the plaintiff around and to have thrown his arm up against the beam. It was sufficient if it caused the plaintiff to make an instinctive effort, reasonable under the circumstances, to avoid what he supposed was imminent danger; and this effort caused the plaintiff to throw his arm where it was injured.

The ultimate facts to be alleged and proven were the neglect of the defendant in maintaining the pipe in a defective condition, the resulting injury to the plaintiff, and his freedom from contributory negligence. A leading case on this subject is the English case of Jones v. Boyce, 1 Starkie, 493. The action was on the case against the defendant, a coach proprietor, for so negligently conducting the coach that the plaintiff, an outside passenger, was apparently placed in a perilous position, which caused him to leap from the coach to the ground, whereby his leg was broken. The coach was not overturned, and evidence was introduced on the part of the defendant tending to show that there was no necessity for the plaintiff to jump from the coach. Lord Ellenborough, in submitting the case to the jury, said:

"It is for your consideration whether the plaintiff's act was the measure of an unreasonably alarmed mind, or such as a reasonable and prudent man would have adopted. If I place a man in such a situation that he must adopt a perilous alternative, I am responsible for the consequences."

In Coulter v. American Merchants' Express Co., 56 N. Y. 585, the complaint was that the plaintiff had received injuries caused by the negligence of defendant's servant. The plaintiff was walking on the sidewalk of a street in Syracuse, when an express wagon belonging to defendant was driven up rapidly upon the sidewalk behind her. She sprang sideways to escape the danger, and struck her head against the wall of a building, and was injured. The court said:

"The instinctive effort on the part of the plaintiff to avoid the danger did not relieve the defendant of responsibility."

In Beven on Negligence in Law (3d Ed.) vol. 1, p. 156, the author says:

"Persons who, in a sudden emergency, are distracted by terror, and thus, between two courses, choose the wrong one, are not disentitled to recover. This is plain; for the very state of incapacity to judge calmly, which induces

the improvident act, is produced by the negligent act of the defendant. To hold that a plaintiff is disentitled to recover in such a case would be to hold that the defendant can set up the state of terror produced by the wrongful act as a protection against the consequences."

The uncontradicted evidence is that the force of the water was sufficient to put out the lights carried by those on the car, leaving them in total darkness, except for an electric light about 100 feet up the slope. The plaintiff testified that the water struck him with such force as to throw him around on the car and put out all the lights. John Gillis testified that the water put out the lights before he realized what had happened. The water struck him in the face, and knocked his cap and light off his head, and threw his head over against the car, and left him in total darkness until it got to the top of the slope. John Pete, a witness for the defendant, testified that the water put out the lights; there was an electric light about 100 feet up the slope; when the water struck him, he put his head down, but the plaintiff did not. This evidence was sufficient to support the allegations of the complaint; and whether, under such circumstances, the defendant was negligent in maintaining the pipe in its defective condition, and the plaintiff free from contributory negligence, were clearly questions of fact for the jury.

The contention that plaintiff assumed the risk, because there had been a shower of water at the point of the accident for several days prior to the injury, is answered by the testimony of the plaintiff and others that the volume of water was not so great when they passed this point before. The plaintiff testified that there never was any danger there from water before; that there never was any leak there before of that amount; that he had no reason or occasion to fear the water when he went up the gangway or slope. If the jury believed this testimony, it was sufficient to warrant it in finding that the plaintiff did not assume the risk incident to the position in which he was placed by reason of the falling water.

It is assigned as error that the court refused to give the jury certain instructions requested by the defendant defining proximate cause. These instructions defined proximate cause as meaning substantially such a cause as might have been foreseen or reasonably expected to result in the injury sustained by the plaintiff. One of these instructions was as follows:

"You are instructed that the water escaping from the joint is not to be deemed the proximate cause of the injury, unless the injury was such a consequence under all the surrounding circumstances of the case as might or ought to have been foreseen or anticipated by the defendant, in the exercise of ordinary care, as a natural result of such defect."

A clear and comprehensive definition of the term "proximate cause" is undoubtedly required in an instruction to a jury in a case where there is a succession of causes, and the question is whether there is a new and independent cause intervening between the primary cause and the injury to the plaintiff. As stated by Mr. Justice Cooley in his work on Torts (3d Ed., p. 99):

"It is not only requisite that damage, actual or inferential, should be suffered; but this damage must be the legitimate sequence of the thing amiss."

In discussing this subject the author lays down the following propositions:

"(1) The one, already more than once mentioned, that in the case of any distinct legal wrong, which in itself constitutes an invasion of the right of another, the law will presume that some damage follows as a natural, necessary and proximate result. Here the wrong itself fixes the right of action. We need not go further to show a right of recovery, though the extent of recovery may depend upon the evidence.

"(2) When the act or omission complained of is not in itself a distinct wrong, and can only become a wrong to any particular individual through injurious consequences resulting therefrom, this consequence must not only be shown, but it must be so connected by averment and evidence with the act or omission as to appear to have resulted therefrom according to the ordinary course of events, and as a proximate result of a sufficient cause.

"(3) If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent. But if the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote."

The author refers to cases illustrating these propositions, among others, the celebrated case of Scott v. Shepherd, 3 Wils. 403, 2 W. Bl. 892. In that case defendant threw a lighted squib made of gunpowder from the street into a market house where a large concourse of people were assembled. The squib was thrown from one market stand to another by the keepers of the stands, in self-protection, until it struck the plaintiff in the face, and, exploding, put out one of his eyes. Judge Cooley says of this case:

"Here was but a single wrong, the original act of throwing the dangerous missile; and though the plaintiff would not have been harmed by it, but for the subsequent acts of others throwing it in his direction, yet as these were instinctive and innocent, 'it is the same as if a cracker had been flung, which had bounded and rebounded, again and again, before it had struck out the plaintiff's eye,' and the injury is therefore a natural and proximate result of the original act. It is an injury that should have been foreseen by ordinary forecast; and, the circumstances conjoined with it to produce the injury being perfectly natural, these circumstances should have been anticipated."

The evidence in the present case tends to show that there was negligence on the part of the defendant in maintaining a defective water pipe, and that there was a natural and continuing sequence uninterruptedly connecting this breach of duty with the injury to the plaintiff. There was but a single wrong, and this wrong constituted an invasion of plaintiff's right to a reasonably safe place in which to work. There was evidence that the injury to plaintiff was a natural one under the circumstances, and should have been anticipated by a reasonably careful and prudent employer. The case comes, therefore, under Judge Cooley's first proposition.

Upon the evidence the court gave the following instructions:

"Your object all the time will be to determine whether there was that degree of negligence which amounted to a breach of duty which an employer owes to the employés. The employer is not legally obligated to insure absolute safety to employés. The obligation of the employer is to exercise the same degree of care for the safety of employés that men of ordinary sense and prudence habitually exercise for their own safety, so as not to expose

employés to dangers and hazards which prudent men do not voluntarily and ordinarily expose themselves to. It is the duty of the employers of labor, who are operating machines or dangerous machinery, to constantly inspect and see that the machinery and appliances in places where men are employed shall be kept in a state of repair, so as to be reasonably safe and to avoid the unnecessary dangers.

"If, after having weighed the evidence and reached a conclusion in your own mind as to what the facts are, you come to the conclusion that there was not that degree of negligence, or if you are unable to find that there is a preponderance of the evidence proving that there was that degree of negligence, which amounted to a breach of duty, your verdict will be for the defendant, without investigating the case any further. If, on the other hand, it appears to you to be proved by a fair preponderance of the evidence that the defendant was negligent as charged in the complaint, then you will come to the second inquiry in the case; and that is whether or not that negligence was the direct or the proximate cause of the injury which the plaintiff suffered. If not, even though the defendant was negligent, if that negligence failed to produce the injury, your verdict should be for the defendant. If those two facts concur—that is, if it is proved by a fair preponderance of the evidence that the defendant was negligent as charged in the complaint and that the plaintiff's injury was a consequence of that negligence—then you will have to inquire, further, whether the plaintiff himself brought the injury upon himself by his own contributory negligence. Here the burden of proof is on the other side. You have no right to find the plaintiff guilty of negligence, unless it is proved by a fair preponderance of the evidence that he was negligent; and his negligence is not an element in the case, unless it is so connected by the testimony that you can find that he was negligent and that his negligence was a contributory cause of the injury."

To these instructions no exception was taken by the defendant. We think, upon the evidence before the court, they were correct and sufficiently explicit; and those requested by the defendant erroneous for the reason that they defined proximate cause in such terms as to take from the jury the question whether there was such a degree of negligence on the part of the defendant as amounted to a breach of duty to the plaintiff to furnish him with a reasonably safe passageway through the shaft in going to and from his work to the mine.

The objection to the instructions of the court appears to be that the court did not define proximate cause as a cause from which the specific injury to the plaintiff was the natural and probable consequence, which should have been foreseen and guarded against by an ordinarily careful and prudent person. In other words, the defendant, to be liable for his negligence, must, under the requested instructions, have foreseen that the water escaping from the defective water pipe would have for its natural and probable consequence the particular injury received by the plaintiff. We do not understand this to be the law in a case involving the question whether there was a primary act of negligence on the part of the employer amounting to a breach of duty to the employé, and a natural and continuous sequence connecting this breach of duty with the injury to the employé. If the jury determine this question of primary negligence adversely to the employer, then he is liable for the consequence of his negligent act, and it need not appear that he anticipated or had reason to anticipate an injury to the particular person who was in fact injured, or the particular kind of injury produced.

It is assigned as error that the court refused to instruct the jury that the plaintiff had testified that he knew the pipe was defective and im-

properly installed, and, therefore, likely to leak; that he knew that it did leak; that he had no right to assume that the leak would be repaired; that he was therefore charged with the assumption of all risks and dangers incident to a sudden increase in the amount of water and its force flowing from the leak; and that if he did not properly protect himself, either by assuming a safe place upon the bumpers or by riding inside the car, his own negligence in failing to do so contributed to the injury and was the proximate cause thereof, and the verdict should be for the defendant if they so found. The instruction was properly refused. The knowledge of the plaintiff that the pipe was defective and leaked did not, as a matter of law, deprive him of the right to assume that the pipe would be repaired. Whether the leak from the pipe might suddenly and unexpectedly increase, as the evidence tended to show that it did, was a question of fact for the jury; and whether, under all the circumstances, the plaintiff assumed the risk of the employment, was a question of fact for the jury, to be determined under proper instructions. Such instructions were given by the court, and no exception taken.

Finding no error in the record, the judgment of the Circuit Court is affirmed.